[S. F. No. 4400. In Bank.—November 20, 1907.]

## CENTRAL PACIFIC RAILWAY COMPANY, Respondent, v. GRETCHEN FELDMAN et al., Appellants.

EMINENT DOMAIN—CONSTRUCTION OF STATUTES.—While statutes providing for the taking of property for public use without the consent of the owner are to be given a strict construction and the power to take must be given by the clear terms of the statute and is not to be extended by implication, still there should not be a construction so narrow as to defeat the evident purpose of the legislature.

ID.—RAILROADS — LAND FOR FREIGHT HOUSE MAY BE CONDEMNED.—Under section 1238 of the Code of Civil Procedure, providing that the right of eminent domain may be exercised in behalf of the following public uses, to wit, "paths and roads either on the surface, elevated, or depressed, for the use of bicycles, tricycles, motorcycles and other horseless vehicles, steam, electric and horse railroads," etc., and subdivision 7 of section 465 of the Civil Code, giving railroad companies power to purchase lands to be used in the construction and maintenance of their roads "and all necessary appendages and adjuncts," or to acquire them by condemnation, a railroad company may exercise the right of eminent domain to condemn a tract of land for the purpose of erecting a freight house thereon upon a proper showing of necessity.

ID.—COMPLAINT—ALLEGATION AS TO ANTECEDENT SELECTION OF LAND.—Section 1244 of the Code of Civil Procedure sets forth what must be contained in a complaint for the condemnation of land, and does

not require that it shall allege that there has been a formal ante-cedent selection of the land involved for the purpose intended; nor need proof of such fact be made by the plaintiff on the trial.

ID.—ALLEGATION OF NECESSITY FOR TAKING.—A complaint by a railroad company to condemn a tract of land for the purpose of a freight house sufficiently shows the necessity for taking the land for public use by allegations to the effect that its business has so greatly increased that its present facilities are inadequate to meet the traffic requirements; and "that it is necessary to construct and maintain an adjunct or appendage to said railroad, to wit: a freight house, adjoining said station grounds and as part thereof, and that it is necessary that the parcel of land here involved . . . be taken for the erection of a freight house for the reception and delivery of freight."

ID.—FUTURE NECESSITY—GROWTH OF NEIGHBORHOOD.—In determining whether the proposed taking is necessary not only the present demands of the public upon the plaintiff may be considered, but also those which may fairly be anticipated on account of the future growth of the neighborhood.

ID.—MARKET VALUE HOW DETERMINED.—In ascertaining the market value of the land sought to be condemned the facts that defendant was unwilling to sell or wished to improve it himself are immaterial. The actual market value of the land is the measure of damages, and not its value in use to the owner or to the party who is seeking to condemn it.

ID.—EVIDENCE OF NECESSITY — HARMLESS ERROR. — Where a witness called by the plaintiff in the action to condemn land for a freight house testified without objection that a draymen's association of which he was president had complained of delays in the delivery of freight, it is harmless, even if error, to permit him to further testify, over objections by the defendant, that such complaints had been made within the last year or two.

ID.—EVIDENCE AS TO REMOTE COST PRICE.—The sustaining of an objection to a question asked a witness for the defendant designed to show the cost price of the land over twenty years prior to the commence-ment of the action is rendered harmless by the witness subsequently testifying to everything of consequence that was sought to be elicited. Besides, the time of the transaction was so remote that the price paid could have little if any weight on the question of value at the date of issuing the summons.

ID.—EVIDENCE AS TO ASSESSED VALUE—CROSS-EXAMINATION OF EXPERT. —While the assessed value of the land is not admissible as original evidence of its market value, a witness who has testified as an expert may properly on cross-examination be asked what is his knowledge regarding the assessed value for the purpose of testing the value of his opinion, and may be likewise cross-examined regard-ing the appraisement of the property in the probate proceedings in connection with the estate of a former owner.

APPEAL from a judgment of the Superior Court of Alameda County, from a final order of condemnation, and from an order refusing a new trial. F. G. Ogden, Judge.

The facts are stated in the opinion of the court.

F. A. Berlin, and Garret W. McEnerney, for Appellants.

A. A. Moore, and Stanley Moore, for Respondent.

SLOSS, J.—This is an action brought by the Central Pacific Railway Company to condemn a parcel of land in the city of Oakland. A trial was had before a jury, which found a verdict in favor of the plaintiff, condemning the land and fixing its value at the sum of four thousand dollars. Findings were filed and a judgment entered accordingly. The plaintiff paid into court the amount of the verdict with costs, and the court made and entered a final order of condemnation. A motion for new trial, made by defendants, was denied. The defendants appeal from the judgment, from the final order of condemnation, and from the order denying their motion for a new trial.

The complaint alleges that plaintiff is the owner of a steam railroad commencing at San Francisco and extending easterly, through the city of Oakland, and thence through the states of California, Nevada, and Utah, to Ogden, in the state of Utah; that it maintains and operates in said city of Oakland, in connection with and as part of its railroad, a station and station grounds between Henry Street on the west, Poplar Street on the east, Fifth Street on the north, and First Street on the south, covering blocks numbers 449, 450, 451, 452, 474, and part of block 473; that plaintiff's business at said station has so greatly increased in volume that the station and grounds are inadequate to meet the traffic requirements; that it is necessary to construct and maintain an adjunct or appendage to said railroad, to wit: a freight house, adjoining said station grounds and as part thereof, and that it is necessary that the parcel of land here involved (being the portion of block 473 not already owned by the railroad company) be taken for the erection of a freight house for the reception and delivery of freight.

By demurrer to the complaint, and in other ways, the appellants presented the contention that the erection of a freight house by a railroad company is not one of the purposes for which the right of eminent domain can be exercised in this state. Section 1238 of the Code of Civil Procedure, as it read at the time this proceeding was instituted, provided that "the right of eminent domain may be exercised in behalf of the following public uses: . . . 4. Wharves, docks, piers, chutes, booms, ferries, bridges, toll-roads, by-roads, plank and turnpike roads; paths and roads either on the surface, elevated or depressed, for the use of bicycles, tricycles, motorcycles and other horseless vehicles, steam, electric and horse railroads, canals, ditches, dams, pondings, . . . etc." It is argued that the words "steam, electric and horse railroads" are not intended to constitute an independent enumeration of public uses for which property may be condemned, but that these words are qualified by the preceding phrase "paths and roads . . . for the use of," so that the section grants merely the right of eminent domain for the purpose of acquiring "paths and roads either on the surface, elevated or depressed, for the use of steam, electric and horse railroads." From this the conclusion is drawn that the right of eminent domain may be exercised by railroads for a right of way and nothing more.

It is no doubt true, as is argued by appellants, that statutes of this character, providing for the taking of property without the consent of the owner, are to be given a strict construction. The power to take the land must be found to be given by the clear terms of the statute. But while the grant of power is not to be extended by implication, there should not be a construction so narrow "as to defeat the evident purpose of the legislature." (*In re New York etc. R. R. Co.* v. *Kip,* 46 N. Y. 546, 551, [7 Am. Rep. 385].) The interpretation insisted on by appellants does, we think, so restrict the operation of the law as to prevent the accomplishment of its manifest purpose. The only ground which furnishes any justification at all for the taking of private property by railroad companies is that in the carriage of passengers and freight such companies are exercising a function of a public nature, and promoting a public interest. To perform this function it is as essential that the railroad company should have space for necessary buildings for the reception, discharge,

loading, and forwarding of freight and passengers as that it should have a right of way on which to lay its tracks, and move its trains. The grant of a right to exercise the power of eminent domain for the use of "steam, electric and horse railroads," not qualified by other words, would, by reasonable construction, include the right to exercise this power for the acquisition of any of the necessary adjuncts of such roads. (*New York etc. R. R. Co.* v. *Kip*, 46 N. Y. 546, 551, [7 Am. Rep. 385]; *In re New York Cent. R. R. Co.*, 77 N. Y. 248; *Protzman* v. *Indianapolis etc. R. R. Co.*, 9 Ind. 467, [68 Am. Dec. 650]; *Giesy* v. *Cincinnati etc. Ry. Co.*, 4 Ohio St. 308; Lewis on Eminent Domain, 2d ed., sec. 170.)

Section 1238 of the Code of Civil Procedure was amended in 1901 (Stats. 1900-1, p. 72), and before that, in 1897 (Stats. 1897, p. 70). Prior to 1897, section 1238 read: "Subject to the provisions of this title, the right of eminent domain may be exercised in behalf of the following public uses: . . . 4. Wharves, docks, piers, chutes, booms, ferries, bridges, toll-roads, by-roads, plank and turnpike roads; steam, electric and horse railroads; canals, ditches, dams, pondings, flumes, aqueducts and pipes, for irrigation, public transportation, supplying mines and farming neighborhoods with water, and draining and reclaiming lands, and for floating logs and lumber on streams not navigable."

That under this reading, "steam, electric and horse railroads," together with whatever was necessary for the proper conduct of such roads, constituted a public use, in behalf of which the power of eminent domain might be exercised, is not disputed. The amendment of 1897 inserted, after "turnpike roads," the words "paths and roads, either on the surface, elevated or depressed, for the use of bicycles, tricycles, motorcycles, and other horseless vehicles." (The amendment of 1901 made no change in the wording of subdivision 4.) It seems clear that it was not intended by the addition of the words inserted in 1897 to restrict the rights theretofore given, but to extend them to new objects. We think the words "paths and roads for the use of" are to be regarded as qualifying merely the words "bicycles, tricycles, motorcycles, and other horseless vehicles," and not the phrase "steam, electric and horse railroads," which is to be given the same meaning that it had before the amendment.

Furthermore, section 1238 of the Code of Civil Procedure must be read in connection with other statutory provisions on the same subject. Section 465, subdivision 7, of the Civil Code gives to a railroad company power to purchase lands, timber, stone, gravel, or other materials to be used in the construction and maintenance of its road, and all necessary appendages and adjuncts, or acquire them in the manner provided in title VII, part III, of the Code of Civil Procedure, for the condemnation of lands. Here is clear evidence of the legislative intent that the power of eminent domain, conferred upon railroad companies, should include not only the actual right of way but all necessary "appendages and adjuncts." This view was taken by this court in *Southern Pacific R. R. Co.* v. *Raymond,* 53 Cal. 223, where it was held that a workshop should be classed as an appendage or adjunct to a railroad, under section 465, subdivision 7, of the Civil Code, and that, where the construction of such workshop was necessary, the company had power to condemn for that purpose. A freight-house is equally an "appendage or adjunct" to the railroad, and its erection must be held to be a purpose for which, under the statutory provision, the power of eminent domain may, upon a proper showing of necessity, be exercised.

The appellants claim that the complaint is defective for failure to allege that the plaintiff, by regular action of the board of directors, had selected the property in question for the purpose of a freight house. But our statute (Code Civ. Proc., sec. 1244) sets forth what must be contained in a complaint in a proceeding of this character, and there is no requirement that the complaint shall allege that there has been a formal antecedent selection of the land involved. The cases cited by appellants are all based on statutory provisions differing from our own.

There is no merit in the contention that the complaint fails to show that the land is needed for a public use or that its taking is a public necessity. In so far as this proposition is based on the premise that the purpose for which the land was sought was not a public use within the meaning of section 1238, Code of Civil Procedure, it is answered by what has been said in an earlier part of this opinion. And the allegations of the complaint, hereinbefore quoted by us, are obviously ample to show the necessity for taking the land in question for such public use.

It is urged that the court erred in giving and in refusing instructions. Some of the points made in this connection rest upon the assumption that the purpose for which the land was sought to be taken was not a public use. This proposition has already been fully discussed. The same may be said regarding the refusal of the court to charge the jury that it was essential for the plaintiff to prove that its board of directors had designated the location of the property in question for the purposes of a freight house. If it was not necessary to make an allegation of such selection, it was not necessary to prove it. In this case, however, there was evidence to the effect that the plan of acquiring the property in question for the purposes of a freight house had been approved by the plaintiff's board of directors, and this evidence was not contradicted.

In the seventh instruction given by the court, the jury is told that in determining whether the proposed taking is necessary, they may consider "if shown by the evidence, not only the present demands of the public upon the plaintiff, but those which may fairly be anticipated on account of the future growth of the city." There was no error in this. Future necessity is a proper factor for consideration. (*St. Louis & S. F. Co.* v. *Foltz,* 52 Fed. 627; *Penn. R. Co.* v. *N. Docks Co.,* 57 N. J. L. 86, [30 Atl. 183] ; *In re Staten Island Co.,* 103 N. Y. 252, [8 N. E. 548].)

The instructions on the mode of ascertaining the market value of the property were correct. The jury were rightly instructed that the fact that the defendants were unwilling to sell, or wished to improve the property themselves, did not affect the market value, and that the "actual market value is the measure, and not its value in use to the owner, or to the party who is seeking to condemn it." (*San Diego L. & T. Co.* v. *Neale,* 78 Cal. 63, [20 Pac. 372].)

Some of the instructions requested by the defendants were properly refused because they embraced propositions which were fully stated in instructions given. Others were based on theories which had no support in the evidence. On the whole, we are satisfied that the instructions of the court contained a full and accurate statement of the law governing the issues to be determined by the jury.

Certain rulings in admitting and excluding evidence are assigned as error.

One Parrish, a witness called by plaintiff, testified without objection that he was president of the draymen's association, and that the question of the delays in the delivery of freight by the railway company had been complained of by the association. He was then asked whether or not the association had within the last year or two made any complaints or representations to the railroad company with reference to the delays of the delivery of freight. Over the objection and exception of defendants, he was allowed to answer in the affirmative. The evidence, if incompetent and hence inadmissible, was harmless. The answer did not add materially to what had already been stated by the witness without objection.

Louis Feldman, one of the defendants, testified that his father had acquired the property in 1879 by conveyance from one Cordes, and that at that time the property was encumbered by mortgage. He was asked what was said, between his father and Cordes, about any mortgage on the property. Plaintiff's objection to this question, as incompetent, irrelevant, and hearsay, was sustained. We think the ruling was proper, but, if it was not, the witness subsequently brought out everything of consequence that was sought to be elicited. The defendants' object was to show that a part of the consideration paid for the conveyance was the payment of a mortgage, and the witness did testify that his father had paid for the property the consideration recited in the deed, and, in addition, a mortgage of four thousand dollars. Besides, the time of the transaction was so remote that the price paid could have little, if any, weight on the question of value at the date of issuing the summons.

The same witness, Feldman, having testified on direct examination that in his opinion the property was worth thirty thousand dollars, was asked on cross-examination, whether he did not know that it had been, in recent years, assessed for taxation at amounts varying from $1925 to $2525. Objections to questions of this character were rightly overruled. While the assessed value of property is not admissible as original evidence of its market value, a witness who has testified as an expert may properly, on cross-examination, be asked what is his knowledge regarding such assessment for the purpose of testing the value of his opinion. (See *San Diego L. Co.* v. *Neale*, 88 Cal. 50, 62, [25 Pac. 977] ; *Santa Ana* v. *Harlin*, 99

Cal. 536, 545, [34 Pac. 224].) The same reasoning is applicable to questions asked the witness regarding the appraisement of the property in the probate proceedings in connection with the estate of the former owner.

None of the other points made with regard to the sustaining or overruling of objections to proffered evidence is of sufficient importance to merit detailed discussion. It is enough to say that no error substantially affecting the rights of the defendants was committed.

The final contention of the appellants, i. e., that the evidence was insufficient to sustain the verdict, is entirely without merit. On the issues as to the necessity for the taking, the plaintiff made out a strong and convincing case, which the defendants did not attempt to meet by contrary evidence. The finding of market value finds support in the testimony of numerous witnesses. On this point there was, to be sure, a conflict of evidence, but the doubt arising from such conflict was, under the familiar rule, to be resolved by the jury.

The judgment and orders appealed from are affirmed.

Shaw, J., Angellotti, J., McFarland, J., Henshaw, J., and Lorigan, J., concurred.