[L. A. No. 5858.    In Bank.—February 25, 1919.]

## KERN COUNTY UNION HIGH SCHOOL DISTRICT (a Municipal Corporation), Respondent, v. RONALD McDONALD et al., Appellants.

[1] EMINENT DOMAIN—ACQUISITION OF SITE FOR HIGH SCHOOL GYM-NASIUM—PLEADING—PREVIOUS AUTHORIZATION BY TRUSTEES—UN-NECESSARY ALLEGATION.—In a proceeding by a high school district to condemn a tract of land for the site of a gymnasium or athletic building, it is not essential to the sufficiency of the cause of action pleaded that the complaint should contain an allegation that the plaintiff was empowered by a valid or any resolution of its board of trustees to proceed in condemnation, since section 1244 of the Code of Civil Procedure, which prescribes the essentials of a complaint in eminent domain proceedings, does not require a statement of the adoption of such a resolution.

[2] ID.—CODE REQUIREMENT—STATEMENT OF RIGHT OF PLAINTIFF—MEANING OF.—The requirement of subdivision 3 of section 1244 of the Code of Civil Procedure that the complaint must contain a statement of the right of the plaintiff has reference only to a statement of the legal right or authority of the plaintiff to exercise the power of eminent domain, and, as against a general demurrer, the complaint complies with the mandate of the statute by alleging, in effect, that the taking was sought pursuant to the provisions of Title VII, Part III, of the Code of Civil Procedure.

[3] ID.—RESOLUTION AUTHORIZING PROCEEDING—MISRECITAL OF SOURCE OF LEGAL AUTHORITY—PREAMBLE—VALIDITY OF RESOLUTION.—The right of a high school district to condemn land for the purpose of acquiring a site for an athletic building is neither restricted nor restrained by the fact that in the preamble of the resolution authorizing the proceedings the right to institute the proceedings was based upon an act of the legislature which had not then gone into effect, since it was unnecessary to the efficacy of such a resolution that it should have a preamble, or that the resolution or preamble should state the statutory authority permitting the proceeding.

[4] ID.—CODE AUTHORITY TO INSTITUTE PROCEEDING.—Section 1238 of the Code of Civil Procedure, which authorizes a school district to exercise the right of eminent domain for the purpose of acquiring public buildings and grounds for the use of any school district, when read in conjunction with various other sections and provisions of the code and of the statute law relative to and regulating the public school system, empowers a high school district, if not ex-

pressly, by necessary implication, to proceed to condemn land for a site for an athletic building.

[5] ID.—PLEADING—AMENDMENT OF COMPLAINT—INCREASE IN QUANTITY OF LAND—DISCRETION NOT ABUSED.—In an action by a high school district to condemn a strip of land for a site for an athletic building, where the original complaint prayed for the condemnation of a strip eighty feet in width by three hundred and forty-four feet in length, there was no abuse of discretion in permitting the filing of an amended complaint on the day of trial praying for the condemnation of a strip one hundred feet in width and three hundred and forty-four feet in length, notwithstanding the resolution authorizing the proceeding provided for a strip of eighty feet in width, it appearing from the answer that the strip described in the amended complaint was all that defendants owned.

APPEAL from a judgment and order of the Superior Court of Kern County. J. W. Mahon, Judge. Affirmed.

The facts are stated in the opinion of the court.

Emmons & Johnstone and Rowen Irwin for Appellants.

W. W. Kaye and Erwin W. Owen for Respondents.

U. S. Webb, Attorney-General, and Frank L. Guerena, Deputy Attorney-General, *Amici Curiae.*

LENNON, J.—In this action, the corporation plaintiff sought and secured, by the exercise of the right of eminent domain, a judgment condemning certain real property belonging to the defendants in the city of Bakersfield. The appeal is from the judgment and final order of condemnation. The complaint was filed June 2, 1917, and, among other things, alleges: ''That the public interest and necessity require the construction by the said Kern County High School District of a gymnasium or athletic building, and also the acquisition by the said district as a site upon which the said building may be erected, of that certain tract of land hereinafter described; that the board of trustees of the said plaintiff on the twenty-fourth day of May, 1917, duly passed and adopted by a unanimous vote of the board of trustees, a resolution directing proceedings to be taken under Title VII, Part III, of the Code of Civil Procedure of the state of California, to condemn said tract of land for the public use set forth.'' Issue having been

joined by the answer of the defendants denying all of the allegations of the complaint, the case was tried with a jury, which found and fixed the value of the property to be condemned at the sum of five thousand five hundred dollars.   Thereupon, the trial court made its findings of fact in substantial accord with the allegations of the complaint, all of which are sufficiently supported by evidence, which in turn supports the judgment and which, therefore, must be affirmed, unless it be held as a matter of law, as is contended for by appellants, that the plaintiff was precluded from proceeding, or rather, was not authorized under any existing law to proceed to condemn the property in suit for the purpose pleaded.   The contention of appellants in this behalf is perhaps more precisely stated in the language of appellants' closing brief, wherein it is said that "appellants claim a reversal . . . upon the ground that the right to condemn the real property involved was based upon a law which, at the time the action was commenced and at the time of trial, had not yet gone into effect."   This contention is rested upon the fact adduced in evidence at the trial of the case that, on May 24, 1917, the plaintiff's board of trustees adopted a resolution which, in a "stately preamble beginning with the emphatic 'Whereas,'" reminiscent of "the style of the early-day legislation," declared that, " . . . by an act of the legislature of the state of California adopted at a recent session thereof it is provided that all students of the high schools shall be required to take at least two hours' physical training per week under a competent physical director," and that "the Kern County High School is not provided with an adequate building for the giving of such training." This resolution then proceeded in the usual and ordinary form to evidence the determination of the said board of trustees that the public interest and necessity required the construction of a gymnasium or athletic building as an adjunct of the Kern County High School, and, after appropriately resolving to proceed with the erection of such a building and declaring that the public interest and necessity required for that purpose the acquisition of the land therein specifically described, concluded with the resolve that said board forthwith take proceedings, under Title VII, Part III, of the Code of Civil Procedure, for the acquisition of said land.

It was an admitted fact in the case that "the act of the legislature" referred to in the preamble of the resolution was

the act of the legislature of this state, approved May 26, 1917, and which became effective July 27, 1917, wherein it was made the duty of the high school board of every high school district in the state to "prescribe suitable courses of physical education" for the pupils thereof (Stats. 1917, p. 1176), and it was the uncontroverted fact that the preliminary proceedings of the plaintiff purporting to authorize and require the commencement of the action of condemnation and the action itself were commenced and concluded prior to the taking effect of that act.

[1]   It was not essential to the sufficiency of the cause of action pleaded that the complaint should contain an allegation that the plaintiff was empowered by a valid or any resolution of its board of trustees to proceed in condemnation.   Section 1244 of the Code of Civil Procedure, which prescribes the essentials of a complaint in eminent domain proceedings, does not require a statement of the adoption of such a resolution, and, therefore, it was not necessary to allege that fact.   (*Central Pacific R. R. Co.* v. *Feldman,* 152 Cal. 308, [92 Pac. 849].)   [2]   The requirement of that code section (subdivision 3), that the complaint "must contain . . . a statement of the right of the plaintiff," has reference only to a statement of the legal right or authority of the plaintiff to exercise the power of eminent domain, and, as against a general demurrer, the complaint before us sufficiently complied with the mandate of the statute by alleging, in effect, that the taking was sought pursuant to the provisions of Title VII, Part III, of the Code of Civil Procedure.   (*Lake Shore etc. R. R. Co.* v. *Baltimore 'etc. R. R. Co.,* 149 Ill. 272, 285, [37 N. E. 91].)   [3]   The resolution in question not being essential to the statement of plaintiff's cause of action, it would seem to follow that proof of its passage was not necessary to the maintenance of plaintiff's cause (*Central Pacific R. R. Co.* v. *Feldman, supra*), but, however that may be, we are satisfied that the source of plaintiff's power to proceed in condemnation for the purpose stated in the complaint did not begin with and end in the act referred to in the resolution; nor was such power, as granted elsewhere in the then existing law, in any wise restricted or restrained by the verbiage of the preamble of the resolution.   The latter proposition is so because it was wholly unnecessary to the efficacy of the resolution that it should have a preamble, or, having it, that the resolution should, in the absence of a statutory

requirement, either in its preamble or elsewhere within its context, contain a recital of the statutory authority permitting, and the necessity prompting, the proposed condemnation. (*Rector etc. of Trinity Church* v. *Higgins,* 4 Rob. (N. Y.) 1; *Bohle* v. *Stannard,* 7 Mo. App. 51; McQuillin on Municipal Ordinances, sec. 539, p. 846; *Cronin* v. *People,* 82 N. Y. 318, [37 Am. Rep. 564].) Assuming the resolution in question to be a jurisdictional prerequisite to the plaintiff's proceeding in condemnation, still it should be construed, if necessary, as declaring and directing the exercise of the right of eminent domain primarily pursuant to the provisions of Title VII, Part III, of the Code of Civil Procedure; and this may and should be done in keeping with "the established rule, . . . aptly stated in an early Maryland case" (McQuillin on Municipal Ordinances, sec. 139, p. 222), where it is said that "it is not essential to the validity of an ordinance, executing powers conferred by the legislature, that it should state, or indicate, the power in execution of which the ordinance is passed. If it state no particular power as its basis, judicial courtesy requires that we should regard it as emanating from that power which would have warranted its passage. If two such powers exist, it may be imputed to either, in conformity to which its provisions and prerequisites show that it has been adopted." (*Methodist etc. Church* v. *Baltimore,* 6 Gill (Md.), 391, [48 Am. Dec. 540].) By like reasoning, in the case of *Delamater* v. *Chicago,* 158 Ill. 575, [42 N. E. 444], an ordinance creating a special assessment was sustained as having been passed in pursuance of an enabling act, despite the fact of a recital of the ordinance that the authority for its adoption was dependent upon a statute which had been repealed; and within the reasoning of the rule stated in *Methodist etc. Church* v. *Baltimore, supra,* it was held in the case of *Baltimore* v. *Ulman,* 79 Md. 469, [30 Atl. 43], that a misrecital in an ordinance relative to the source of power under which it was enacted would not suffice to limit the source of the power to that specified if the power in fact existed elsewhere. Of course, in this discussion of the scope and effect of the preamble to a resolution, as well as the requirements of the resolution itself, we are not forgetful of the distinction which ordinarily obtains between an ordinance and a resolution, and while the rule relied upon to construe the resolution in question here has more particular application to, or, rather, has

been more particularly applied to ordinances, still we apprehend that, despite the distinction, the rule should be and is the same with reference to resolutions.

[4]   This, then, brings us to a consideration of the text of Title VII, Part III, of the Code of Civil Procedure, and we find embodied therein section 1238 of that code as it existed and was in operation at and before the commencement of the action and the preliminary proceedings in condemnation in question here, which authorizes a school district to exercise the right of eminent domain for the purpose of acquiring "public buildings and grounds for the use . . . of any . . . school district." This code section, as we read it in conjunction with various other sections and provisions of our code and statute law relative to and regulating the public school system of the state, all of which were also in full force and effect at all of the times invoved in this action, clearly empowered the plaintiff, if not expressly, then by necessary implication, to proceed to condemn the land in suit for the purpose prescribed in the resolution and alleged in the complaint.   Section 1750 of the Political Code provides that "every high school course of study may include training in athletics . . . for which credit may be given as a part of said high school work, and instruction therein shall be given at such times and in such manner as said high school board shall determine." Section 1668 of the Political Code commands that "attention must be given to such physical exercises for the pupils as may be conducive to health and vigor of body as well as mind." Subdivision 5 of section 1610 of the Political Code (Stats. 1917, p. 739), formerly subdivision 21 of section 1617 of the same code, provides that boards of school trustees and city boards of education shall have power and it shall be their duty "to give diligent care to the health and physical development of pupils," and by virtue of the provisions of section 1741 of the Political Code the powers and duties of school boards now found in said subdivision 5 of section 1610 of that code and primarily existing in subdivision 21 of section 1617 were at all of the times herein involved applicable to high school district boards.   In addition to all of this there was in force and effect at and prior to the commencement of the action and the institution of the preliminary proceedings included therein, a statute entitled "An act to provide for health and development supervision in the public schools," etc. (Stats. 1909, p. 908), which author-

ized school boards throughout the state to establish health and development supervision in the public schools of the state which should "secure the correction of developmental and acquired defects of both pupils and teachers which interfere with health, growth and efficiency," and (subdivision 2) "to adjust school activities to health and growth needs and to development processes. . . . "

It is settled law that the power to determine what uses are public is vested in the legislature, and clearly the public character of the use sought to be secured in the present case is embodied within the several laws hereinbefore enumerated. While it is true that no express mention is made in any of the code sections or statutes previously mentioned and outlined concerning the necessity for and construction of a gymnasium and athletic building as an adjunct for the physical development and training of the pupils of the public schools, still the necessity for such a building and its consequent construction is inherently embodied in the underlying principles which permeate and prompted the enactment of those several laws, and the power to put these principles into actual operation by the creation and employment of such agencies as would ordinarily and naturally be required for the accomplishment of the desired results follows by necessary implication. The plaintiff, having thus been duly invested by existing law with the right to provide the agencies necessary to the accomplishment of the legislative design, rightly resorted to the exercise of the power of eminent domain in the furtherance of that design, and it was not essential to the exercise of that power that the plaintiff should have previously prescribed as a part of the high school curriculum a course of instruction in athletics.   Granting, for the sake of discussion, that under the terms of section 1750 of the Political Code the institution of a course of instruction in athletics was a matter of discretion with the plaintiff and that the exercise of such discretion, to be effective, was required to be evidenced by formally including such a course in the "high school course of study," still it cannot be said that a present necessity for the use in suit within the meaning of the law of eminent domain did not exist at the time of the commencement of the action.   In this behalf it will be noted that the act of May 26, 1917 (Stats. 1917, p. 1177), became effective on July 27, 1917, just one month and twenty-five days subsequent to the institution of the action,

and required the plaintiff at the taking effect thereof to "prescribe suitable courses of physical education," and the requirement when in operation was mandatory. (*San Francisco* v. *Hyatt,* 163 Cal. 346, 353, [125 Pac. 751].)

Clearly, under existing laws the plaintiff was empowered in its discretion to provide suitable courses of physical education, and therefore could have exercised such discretion in anticipation of the mandatory requirements of the new law, but doubtless deferred doing so until such time as it could be assured that it would have the appurtenances at hand necessary to the inauguration and effective operation of such a course; and it may be fairly assumed that the act in question was the incentive for the proceedings in condemnation in anticipation of the future and added needs of the school district which were certain to come into being with the operation of the mandatory requirements of the new law. Immediate future needs are ordinarily an essential factor in the determination of the question of whether or not there is a present necessity for a taking in condemnation for the purposes of a particular public use. (*Central Pac. R. R. Co.* v. *Feldman,* 152 Cal. 308, [92 Pac. 849].) And this is so, because of the obvious fact "that the beneficial exercise of the power of acquiring property for public use cannot be enjoyed unless allowed in anticipation of the contemplated improvement and . . . the mere fact that the land proposed to be taken for a public use is not needed for the present and immediate purpose of the petitioning party, is not necessarily a defense to a proceeding to condemn it." (*Matter of Staten Island, etc.,* 103 N. Y. 251, [8 N. E. 548].)

[5] But one other point remains to be discussed, and that involves the right of the plaintiff to amend its complaint, which was done on the day when the action came on for trial. The amended complaint differed from the original in the particulars only, that it did not plead the previous passage of a resolution by its board of trustees, and in that a cause of action was stated for the condemnation of the entire one hundred feet of land belonging to the defendants instead of only eighty feet thereof as originally prayed for. It is now insisted that the amendment was in no wise materially related to the cause of action originally pleaded, but constituted the statement of a supplemental and entirely new cause of action. This contention, like the primary contention of the appellants, rests, in

effect, upon the erroneous assumption that the resolution of
the plaintiff's board of trustees authorizing and directing the
institution of proceedings for the condemnation of only a part
of defendants' land, created and conclusively controlled the
plaintiff's cause of action in the first instance, and that, as a
consequence, a second resolution of plaintiff's board of trus-
tees not pleaded but received in evidence, and which called for
the condemnation of all of the defendants' land, likewise
created a new and distinct right in plaintiff to exercise the
power of eminent domain, and therefore it is argued that the
amendment of the complaint was the statement of a new and
distinctly different cause of action.    As previously pointed
out, the allegation of a preceding resolution of plaintiff's
board of trustees authorizing and directing the institution of
condemnation proceedings was not essential to a statement of
plaintiff's cause of action.    Obviously, therefore, neither reso-
lution operated to create and then control the plaintiff's cause
of action stated either in the first or second instance.    The
resolutions referred to not being a basic element of the plain-
tiff's cause of action, we are satisfied that the amendment in
question did not plead a new and distinct cause of action, and
that, under the circumstances which prompted the amend-
ment, the trial court had no recourse but to allow it.    The
rules of pleading and practice pertaining to civil actions gen-
erally are in this state applicable to proceedings in eminent
domain, "and constitute the rules of pleading and practice
therein" (Code Civ. Proc., sec. 1262), and it has been held in
other jurisdictions, where the same or a similar rule prevails,
that "amendments are recognized and allowed in condemna-
tion proceedings as in civil actions . . . to alter the allega-
tions of the petitions as to . . . the quantity of land desired
by lessening or increasing the quantity." (Standard Ency.
of Proc., pp. 296, 297.)    An instance of the application of the
rule in this behalf is to be found in the case of *Newton* v.
*Alabama etc. Ry. Co.*, 99 Ala. 468, [13 South. 259], in which
the situation, in so far as the pleadings were concerned, was
identical with that presented here.    There the petition as
originally filed sought the condemnation of a strip of land 80
feet in width as a right of way running through the entire
premises involved in the condemnation proceedings.    Subse-
quently, the petition was amended to the extent of enlarging
the right of way sought to be condemned from 80 feet to one

hundred feet in width, and in passing upon the merits of a motion made in the court below to set aside the judgment upon the ground that it was void for the reason that the amendment "changed the subject matter of the suit," it was held, in effect, by the court of last resort, that a new and a different cause of action was not pleaded by the amendment to the original petition and that under the "liberal system of amendments" prevailing in that jurisdiction the lower court had authority to permit the amendment. In the case before us the record shows that the amendment to the complaint was sought and permitted because of the fact that on the day the case was called for trial one of the defendants, Lester McDonald, sought and secured permission, without objection, to file his separate answer which, in effect, averred that the whole tract of land owned by the defendants is of the approximate dimensions of 100 by 344 feet fronting upon a certain street in the city of Bakersfield, and that a judgment in favor of plaintiff as prayed for in the original complaint of approximately 80 feet in width fronting on said street would leave the remaining portion of defendants' land only of the approximate width of 20 feet, and therefore comparatively worthless. It will thus be seen that the effect of this answer, if it were supported by evidence, would be to require the plaintiff to pay practically the value of the entire one hundred feet of land belonging to the defendants, while under the pleading and prayer of the original complaint it could acquire only 80 feet thereof. Manifestly, such a result would be unjust, and clearly the exigencies of the situation warranted the plaintiff in seeking, and justified the trial court in permitting, the amendment, and particularly is this so in view of the fact that the defendants do not claim, and under the circumstances narrated could not claim, that they were caused any surprise or detriment by the amendment in question.

The judgment and order are affirmed.

Wilbur, J., Melvin, J., Sloss, J., Shaw, J., and Angellotti, C. J., concurred.

Rehearing denied.

All the Justices concurred.