[Civ. No. 9434.   Second Appellate District, Division Two.—October 22, 1934.]

UNIVERSITY OF SOUTHERN CALIFORNIA (a Corporation), Respondent, v. NANCY H. ROBBINS, Appellant.

524

McAdoo & Neblett, Frank G. Swain and Judd D. Kimball for Appellant.

Scarborough & Bowen, Hill, Morgan & Bledsoe, Vincent Morgan, Stanley S. Burrill and Kenneth K. Wright for Respondent.

SCOTT, J., *pro tem.*—Plaintiff brought this action in condemnation for the purpose of acquiring a certain parcel of land owned by defendant, which is required for use as a portion of the grounds surrounding a newly constructed university library. It is proposed to suitably landscape and beautify it with lawn and shrubs, and, by intersecting it with paths, to make the entrance to the library more readily accessible. The trial court determined that plaintiff was entitled to take the land for the purpose indicated, and awarded defendant compensation for the detriment caused to her. The adequacy of the award is not questioned, but defendant has appealed from the judgment on other grounds.

At the outset appellant challenges the right of respondent to exercise the power of eminent domain, and declares that the latter is endeavoring to take private property for private use, contrary to the provisions of the Fourteenth Amendment to the Constitution of the United States.

"Eminent domain is the right of the people or government to take private property for public use." (Code Civ. Proc., sec. 1237.) "The power of eminent domain or the right to take private property for public purposes inheres in the state as an attribute of its sovereignty, and is vested in the legislature. The legislature can take private property against the will of the owner only for public use and after just compensation to the owner has been paid or secured. Except as restricted and controlled by these two requirements, the power of the legislature to take private property is unlimited and its determination so to do is conclusive. Whether the use be public and whether proper compensation has been made are judicial questions, the final determination of which rests with the courts. All other questions involved in the taking of private property are of a legislative nature." (*State* v. *Van Reed* [*Knapp* v. *State*], 125 Minn. 194 [145 N. W. 967].) "The legislature must designate, in the first place, the uses in behalf of which the right of eminent domain may be exercised, and this designation is a legislative declaration that such uses are public and

will be recognized by courts; but whether, in any individual case, the use is a public use must be determined by the judiciary from the facts and circumstances of that case." (*Lindsay Irr. Co.* v. *Mehrtens,* 97 Cal. 676 [32 Pac. 802].) "If the subject-matter of the legislation be of such a nature that there is any doubt of its character, or if by any possibility the legislation may be for the welfare of the public, the will of the legislature must prevail over the doubts of the court." (*In re Madera Irr. Dist.,* 92 Cal. 296 [28 Pac. 272, 27 Am. St. Rep. 106, 14 L. R. A. 755]; *Walker* v. *Shasta Power Co.,* 160 Fed. 856 [19 L. R. A. (N. S.) 725, 87 C. C. A. 660].) In upholding the right of a high school district to acquire by condemnation property for a high school gymnasium, our Supreme Court declared in 1919: "It is settled law that the power to determine what uses are public is vested in the legislature." (*Kern County High School Dist.* v. *McDonald,* 180 Cal. 7, at p. 13 [179 Pac. 180].)

The section of our code under which this action was brought is as follows: "Subject to the provisions of this title, the right of eminent domain may be exercised in behalf of the following public uses: . . . subd. 2. Public buildings and grounds for use of a state, or any state institution, or any institution within the state of California which is exempt from taxation under the provisions of section 1a of article XIII of the Constitution of the state of California, and all other uses authorized by the legislature of the state of California." (Code Civ. Proc., sec. 1238.) The constitutional provision referred to sets out: "Any educational institution of collegiate grade, within the state of California, not conducted for profit, shall hold exempt from taxation its buildings and equipment, its grounds within which its buildings are located, not exceeding one hundred acres in area, its securities and income used exclusively for the purposes of education." (Const. Calif., art. XIII, sec. 1a.)

Plaintiff is a university formed by the consolidation, under Civil Code, sections 652 and 653, of two separate institutions, the one formerly known as "The University of Southern California", incorporated in 1880, and the other as "The College of Liberal Arts of the University of Southern California", incorporated in 1892. The consolida-

tion of the two under the name of the University of Southern California was effected in 1928. The "amended articles of incorporation" under which plaintiff operates describes it as being "purely benevolent and beneficent in its purpose and organization", and appellant concedes that "it is a benevolent nonprofit corporation". The said articles also declare: "This university shall be open and equal privileges accorded alike to each and every resident of this state, whether male or female, and regardless of nationality, race or religious belief, who possess the required qualifications for entrance, and no person shall be denied admission to this university who possesses such qualifications. Said qualifications shall be of the same general character as those required by state colleges and universities in this state."

Appellant concedes that "no question can be raised that the University of Southern California and its new library offer cultural facilities which are valuable to the community", but protests that there is lacking that essential element of *right to use* which must be present to qualify a use as public in the sense in which we are considering it. In other words, the fact that respondent is a private corporation is not the basis of appellant's objection. It is rather the assumption by the latter that the use to which respondent proposes to devote the land is not a public use.

The right of a private corporation to take land under the right of eminent domain for public use is not questioned. As to what constitutes a "public use" our California Supreme Court "has consistently held that 'public use' means 'use by the public', and that to make a use public a duty must devolve on the person or corporation holding the property appropriated by the right of eminent domain to furnish the public with the use intended, and the public must be entitled as of right to use or enjoy the property taken". (*Gravelly Ford Co.* v. *Pope & Talbot Co.*, 36 Cal. App. 556 [178 Pac. 150].) The United States Supreme Court in analyzing this matter further clarifies the above definition when it observes that "It is obvious, however that what is a public use frequently and largely depends upon the facts and circumstances surrounding the particular subject-matter in regard to which character of the use is questioned. . . . It is not essential that the entire community, or even any considerable portion thereof,

should directly enjoy or participate in an improvement in order to constitute a public use." (*Fallbrook Irr. Dist.* v. *Bradley,* 164 U. S. 161 [17 Sup. Ct. 56, 41 L. Ed. 369].)

The framers of our state Constitution gave recognition to the high importance of education for a self-governing people and solemnly enjoined our lawmakers in the following language: "A general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the legislature shall encourage by all suitable means the promotion of intellectual, scientific, moral and agricultural improvement." (Art. IX, sec. 1.) The legislature, mindful of this duty, has enacted from time to time laws appropriately designed to make effectual this ideal, including the code section under which this action is brought. In doing so it has properly assumed the power vested in it as a body composed of duly elected representatives of the citizens of this state, and has exercised a discretion which is a reasonable concomitant to the responsibility imposed upon it by the Constitution. The legal philosophy of our state with reference to education is discussed in *Veterans' Welfare Board* v. *Riley,* 189 Cal. 159 [208 Pac. 678, 22 A. L. R. 1531]. In that case the validity of an act which provided educational aid to veterans was upheld, and the legislature's right to devote taxpayers' money to this useful purpose was confirmed. The law had been assailed on the theory that such aid amounted to a gift of public funds and was therefore unconstitutional. The court said: "Bearing in mind that the burden is primarily upon the state legislature to determine whether or not the purpose served is a public purpose, and whether or not the development of the state requires the extension of educational facilities and the giving of additional opportunities to different types of students, it may safely be said that the question is one for the legislature and that the broad general restrictions upon the state legislature prohibiting gifts should not be held to prevent reasonable allowances made to enable students to secure the advantages of educational institutions." Applying the same basic reasoning to the problem here presented, we conclude that the procedure which has been followed in this case by the legislature and the trial court is in conformity with the

purpose declared by the Constitution and the object which it sought to attain.

This view is expressed in the case of *Connecticut College for Women* v. *Calvert,* 87 Conn. 421 [88 Atl. 633, 48 L. R. A. (N. S.) 485], when the court declares: ''It is for the legislature to say whether any given use is governmental in its nature or not, subject to review by the courts only in exceptional cases of extreme wrong, and in the present case we accept and endorse the legislative declaration that the higher education of women is in its nature a public use.'' Although relied on by appellant, the latter case is readily distinguishable from the case at bar. There the college lacked in its organic structure the very elements upon which the respondent here properly relies in asserting its right to take the property in question, and accordingly the court denied to the college the right to exercise the power of eminent domain. In the Connecticut case the court finds the college fatally deficient in the required elements, in the following words: ''There is no allegation in the petition that the public has, or can acquire, the right to enjoy the benefits of the land sought to be taken, no provision to that effect in the petitioner's charter, and the stated corporate purposes of the petitioner are not such as to impose upon it, as a necessary legal consequence of its corporate character, the obligation of admitting to its courses of instruction all qualified candidates to the extent of its capacity, without religions, racial or social distinction.''

In its discussion of principles involved in cases of this character the court in the case just cited noted the recognition by the United States Supreme Court (see *Fallbrook Irr. Dist.* v. *Bradley, supra*) of the right of each state to declare those uses public which are necessary to the development of its natural resources, and added that ''these cases proceed upon what appears to be the right of a state, as a measure of self-preservation, to prevent the stubbornness or avarice of a private proprietor from obstructing the development of its own physical resources''. Even where it appears, as in this case, that no unworthy motive has led the property owner to question the seizure of her property for the proposed use, the same rule must be applied as in a case where private greed seeks to thwart public good. The same principle is again asserted in cases

which uphold the taking of private property by a private cemetery corporation for a public use, for the reason that "the burial or other safe disposition of the dead is a necessity essential to the preservation of the health of the living". (*Starr Burying Ground Assn.* v. *North Lane Cemetery Assn.,* 77 Conn. 83 [58 Atl. 467]; *In re Lyons Cemetery Assn.,* 93 App. Div. 19 [86 N. Y. Supp. 960].) It could not reasonably be urged that the development of public utilities and natural resources or the burial of the dead are more truly public uses than the intellectual development of our citizens. The higher education of youth in its largest implications is recognized as a most important public use, vitally essential to our governmental health and purposes. From the very nature of respondent as an educational institution, with qualities fixed by its articles of incorporation above quoted, it is apparent that the land here considered will be devoted by it to a high public use; and its dedication to that objective is made further apparent by the fact that respondent seeks to acquire such property by these proceedings rather than by private purchase.

Appellant cautiously foresees a possibility that the articles of incorporation of respondent may be amended or an arbitrary ruling adopted so as to infringe the rights which the public may now enjoy. It is well to look ahead to avoid possible action which would divest the public of some benefit which it rightly holds, yet we are constrained to measure men and institutions by their known qualities and records. The illustrious record of respondent university for half a century is a matter of common knowledge, and the creative altruism of its graduates who have become integrated into the life of our state bears impressive testimony to its ideals and purposes. It is unreasonable to suppose that such an institution, in view of its known record and character, would seek by trickery or evasion to deprive the public of the benefits of the property in question, which its articles of incorporation and its action in thus acquiring have in effect dedicated to public use. It is not the policy of the law under such circumstances to withhold public benefits or retard progress because of fear that some individual or group within an organization may attempt to do wrong or act ill-advisedly.

■ As opposed to the views just expressed appellant directs our attention to a certain bulletin, which she declares negatives the declaration of the articles of incorporation as to the public nature of respondent university. This bulletin, issued in connection with the college of pharmacy, says in part: "The university reserves the right to reject any applicant for admission, even though the applicant may meet the requirements here listed." Testimony at the trial disclosed that this admonition in the bulletin was to facilitate the exclusion of certain persons whose moral and ethical purposes were inimical to the university and to society. Since good morals and lawful purpose are as reasonably required of entrants to college as academic preparation, such a reservation could not be construed as a declaration of purpose contrary to that above discussed nor as a denial of full rights to an otherwise qualified applicant.

■ A further question is raised as to whether respondent university is one of the institutions entitled to tax exemption under article XIII, section 1a, Constitution of California, *supra*. It is urged that it is not entitled to such exemption because it is not an educational institution exclusively of collegiate grade. The basis for this contention is the disclosure by the university comptroller that certain "special" students were permitted to take courses even though they had not the prerequisite of four years high school education. The question is answered by Political Code, section 3613, subdivision 2, which says: "An educational institution of collegiate grade is deemed and defined to be an institution . . . which requires for regular admission the completion of a four year high school course or its equivalent. . . . " The evidence shows that respondent university complies with this requirement as to all regular students, and the giving of college courses to special students would not change the status of the institution 'as fixed by law.

■ It is urged that section 1238 of the Code of Civil Procedure, subdivision 2, quoted above, is contrary to the provisions of article I, section 11, of the Constitution of California, which provides that "all laws of a general nature shall have a uniform operation". The suggestion is made that the code section referred to is discriminatory

in giving the right of eminent domain to institutions such as respondent and denying it to other educational institutions. The Constitution (art. XIII, sec. 1a), however, establishes a certain class within which respondent naturally falls. The designation of educational institutions of collegiate grade as being a class separate and apart from secondary and elementary schools is both natural and constitutional (*Pasadena University* v. *County of Los Angeles,* 190 Cal. 786 [214 Pac. 868]), and the legislature has the right, as in the code section cited, to establish classifications which are founded on some natural, intrinsic or constitutional distinction. (*People* v. *Jordan,* 172 Cal. 391 [156 Pac. 451]; 12 Cor. Jur. 1128, sec. 855.)

It is finally argued that respondent has no authority under the law to take the land by these proceedings, because the land is not to be under the library building, but is to be used as grounds therefor, being landscaped and intersected by paths. Appellant's amended answer sets out that she then had on the parcel in question a drugstore, a residence, two cottages and two garages. Ordinary experience and judgment would indicate that a library, which is the center of much of the aesthetic, cultural and educational life of a university, needs adequate provision for light, air and freedom from the noise and confusion of business, as well as suitably artistic grounds and convenient paths. Our attention has not been directed to any authority which would support a suggestion to the contrary. On the other hand, the code specifically provides that "the right of eminent domain may be exercised in behalf of . . . public buildings *and grounds*". (Italics ours.) The constitutional exemption from taxation likewise includes not only buildings but also grounds. Its use as a part of the grounds surrounding the library affords additional reassurance to the public that its appropriate enjoyment by them will be more complete than if it were occupied by the building itself. In discussing the taking by a municipality of land for street purposes under the right of eminent domain the New York Supreme Court, Appellate Division, said: "Land may also be taken, in connection with such specific use, for the purpose of furnishing ample space for the access of light and air, and also to beautify and adorn. A street may in part unite the two purposes—one

to furnish a way for travel, and the other as a park or public place." (*In re Curran* [*Curran* v. *Guilfoyle*], 38 App. Div. 82 [55 N. Y. Supp. 1018].) The same reasoning which allows the taking of sufficient land to permit the erection of a building of suitable dimensions would justify taking such further land as would fully and effectually carry out the purposes for which the building was erected. The taking of the land such as that in question was expressly contemplated by the legislature and is in accord with the liberal construction given by our courts to such provisions of the law. (*Vallejo & Northern R. R. Co.* v. *Reed Orchard Co.*, 169 Cal. 545 [147 Pac. 238]; *Kern County High School Dist.* v. *McDonald, supra.*)

Judgment affirmed.

Stephens, P. J., and Desmond, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on December 20, 1934.