[S. F. No. 19197.   In Bank.   July 22, 1955.]

MELCHIOR LINGGI, Appellant, v. MARIA GAROVOTTI, Respondent.

Wallace S. Myers for Appellant.

Freitas, Freitas & Allen, Freitas, Allen, McCarthy & Bettini and Richard V. Bettini for Respondent.

EDMONDS, J.—Melchior Linggi is endeavoring to condemn a right of way for a sewer line over adjoining land used for residence purposes. His appeal is from a judgment entered upon an order sustaining a demurrer to his complaint.

A two family apartment building stands on land owned by Linggi facing Sir Francis Drake Boulevard. The apartment house is connected with a public sewer in that street which, during certain seasons of the year, according to the complaint, is inadequate to carry off the sewage. At these times, it is alleged, the sewage backs up and overflows on the Linggi property, creating an unhealthy condition and a nuisance.

Adjoining the Linggi property on the south is the residence of Maria Garovotti which fronts on Oak Street. On this street, the complaint asserts, is a public sewer which provides the only adequate outlet for the sewage from the Linggi building. Mrs. Garovotti has refused to convey to Linggi an easement for the construction and maintenance of a pipe line across her property in order to abate the nuisance. Such an easement, the complaint concludes, is for a public use within the meaning of section 1238, subdivision 8 of the Code of Civil Procedure.

The ground of general demurrer is that to give Linggi the right of eminent domain would be in violation both of article 1, section 13 of the Constitution of the state, and of the Fourteenth Amendment of the United States Constitution. The demurrer also asserts that the complaint is ambiguous, unintelligible, and uncertain in that it does not

appear therein that the public sewer system in Sir Francis Drake Boulevard is inadequate.

Any deficiency in the complaint attacked by the special demurrer could have been corrected by amendment. If the demurrer on these grounds was sustained without leave to amend it was an abuse of discretion. The decisive question, therefore, concerns the sufficiency of the facts pleaded by the complaint to state a cause of action and the constitutionality of the applicable statutes.

Linggi contends that section 1001 of the Civil Code authorizes a private individual to maintain an action to acquire by eminent domain property for any use specified in section 1238 of the Code of Civil Procedure. As he reads these statutes, they allow him to obtain by condemnation an easement over private property for the purpose of connecting his building with the mains of the established public sewer system in Oak Street. Such an easement, he says, would be for a public use.

Respondent asserts that the court, not the Legislature, is the final arbiter of whether the facts of the particular case justify a condemnation for a public use. A public use is not established, the argument continues, unless the public is entitled, as of right, to use or enjoy the property taken. The complaint also is attacked upon the ground that it does not show wherein the taking of property sought to be condemned is necessary, a requirement specified by section 1241(2) of the Code of Civil Procedure.

Section 1001 of the Civil Code provides:

"Any person may, without further legislative action, acquire private property for any use specified in section twelve hundred and thirty-eight of the Code of Civil Procedure either by consent of the owner or by proceedings had under . . . [eminent domain]; and any person seeking to acquire property for any of the uses mentioned in such title is 'an agent of the state,' or a 'person in charge of such use,' within the meaning of those terms as used in such title."

In *Moran* v. *Ross*, 79 Cal. 159 [21 P. 547], partners who owned a railroad sought to condemn private property for a right of way across it. The court said: "[T]he power of the state to condemn land for public uses must, in the main, be exercised by agents, and for that reason this power may be delegated by the legislature of the state either to corporations or individuals, who act as such agents and under legislative control." (P. 160.) After quoting from the pro-

visions of the Code of Civil Procedure governing the right of eminent domain and section 1001 of the Civil Code, it was held: "These provisions of the codes, taken together, confer upon private individuals the right of eminent domain, in this class of cases, in plain and unequivocal terms." (P. 162.)

Similar reasoning has been employed to authorize the use of eminent domain by a private water company (*San Joaquin & Kings River Canal & Irr. Co.* v. *Stevinson,* 164 Cal. 221 [128 P. 924]), and in *University of So. Calif.* v. *Robbins,* 1 Cal.App.2d 523 [37 P.2d 163], a private university was allowed to condemn land for use as part of a landscaping program in connection with its library building.

The respondent particularly relies upon the terms of the applicable statute for her position that, although an individual may maintain an action in eminent domain, the purpose pleaded by the complaint is not one specified by section 1238 of the Code of Civil Procedure. Under that statute, "the right of eminent domain may be exercised in behalf of the following public uses:

"8. Sewerage of any incorporated city, city and county, or of any village or town, whether incorporated or unincorporated, or of any settlement consisting of not less than 10 families, or of any buildings belonging to the State, or to any college or university, *also the connection of private residences and other buildings, through other property, with the mains of an established sewer system* in any such city, city and county, town or village." (Emphasis added.)

▉ A fundamental principle of the law of eminent domain has been stated as follows: " 'The legislature must designate, in the first place, the uses in behalf of which the right of eminent domain may be exercised, and this designation is a legislative declaration that such uses are public and will be recognized by courts; but whether, in any individual case, the use is a public use must be determined by the judiciary from the facts and circumstances of that case.' [Citation.] ▉ 'If the subject-matter of the legislation be of such a nature that there is any doubt of its character, or if by any possibility the legislation may be for the welfare of the public, the will of the legislature must prevail over the doubts of the court.' " (*University of So. Calif.* v. *Robbins, supra,* pp. 525-526.)

No appellate court of California has considered the question as to whether an individual may maintain an action

under section 1238 of the Code of Civil Procedure for the purpose of acquiring an easement to be used for a sewer connection from a single residence. *City of Pasadena* v. *Stimson*, 91 Cal. 238 [27 P. 604], was an action by a municipal corporation to condemn a right of way for a sewer over several lots. In upholding the right of the municipality to condemn the land for that purpose, the court said: "A sewer in the neighborhood of dwellings may be an evil, but it is evident that the legislature regards it as a necessary evil, since it allows private property to be taken for the construction of sewers. Sewers are in fact a necessary evil; but when they are planned and constructed with reasonable regard to the results of sanitary teachings, they are authorized by statute. . . ." (Pp. 254-255.)

In *Machado* v. *Board of Public Works of Arlington* (1947), 321 Mass. 101 [71 N.E.2d 886], one DiMaggio owned property abutting on the Parkway and adjacent to the land owned by Machado. DiMaggio's residence was serviced by a cesspool, which was declared to be "impractical." His application to the Board of Public Works to have a sewer installed in the Parkway was denied upon the ground that the cost would be prohibitive. DiMaggio renewed his application, suggesting that a pipe line be constructed across Machado's lot and another owned by Machado to the rear of it to connect with a sewer on Decatur Street, a block south of the Parkway. The board, upon condition that DiMaggio bear the cost of the "easement rights," granted the application and condemned an easement across Machado's two lots. Machado sought certiorari to quash the proceedings. In affirming the judgment, the court held:

" 'The purpose of the legislature . . . was to place in possession of the city council the means of abating nuisances offensive to the community and dangerous to the health of the people. The objects therefore to be accomplished by the exercise of the power it confers are so obviously connected with means to be adopted for the promotion of the general welfare of the community, and in which all citizens have a common interest, that the suggestion of a want of constitutional power in the legislature for its enactment seems to be entirely without foundation.' [*Hildreth* v. *Lowell*, 11 Gray (Mass.) 345, 350, 351.]

"It is true that the immediate purpose of the easement taken in the petitioners' land was to afford DiMaggio access to the sewer in Decatur Street, and it might seem at first

blush that he alone was benefited. But actually that is not so. As the return shows, one of the reasons, if not the chief one, which gave rise to his application was the unsatisfactory condition of his cesspool, which the board of health had ordered him to remedy. It requires no discussion to demonstrate that this was a condition of such concern to the health and welfare of the town that its elimination by the means here adopted was a public purpose. This is not a case, therefore, where the taking can be said to be colorably for the use of the town, but really for the benefit of an individual. ·

''We have not overlooked the fact pressed upon us by petitioners that at one of the meetings of the respondents, as noted above, DiMaggio assented to a proposal that he 'assume the cost of all easement rights.' But the mere fact that DiMaggio may have agreed to reimburse the town for the cost of the taking would not render it invalid. The essential thing is whether the purpose for which the taking was made was a public one. It is settled that a taking otherwise lawful is not invalid merely because those specially benefited pay for the cost of it either in whole or in part.'' (P. 888.)

The respondent attacks the complaint, not only upon the ground that the statute does not authorize condemnation by an individual for his sole use, but also because the facts alleged show no right or necessity to invoke such power in the circumstances pleaded. This argument suggests that the complaint is defective because Linggi does not allege that the public authorities have refused to enlarge the sewer in Sir Francis Drake Boulevard, or that the easement desired is the only, or even the most feasible, route to Oak Street.

Section 1244 of the Code of Civil Procedure, which states the requirements of the complaint in an eminent domain action, specifies only that the plaintiff must allege his right to take the property for public use. That requirement is satisfied by the general allegations in Linggi's complaint of facts showing a proposed taking pursuant to sections 1001 of the Civil Code and 1238, subdivision 8 of the Code of Civil Procedure. (*Kern County Union High School Dist.* v. *McDonald,* 180 Cal. 7, 10 [179 P. 180].) In addition, section 1241 of the Code of Civil Procedure requires the condemnor to show that the use to which it is to be applied is one authorized by law and that the taking is neces-

sary to such use. This section must be construed in conjunction with section 1244, and a statement of necessity is an essential element of the complaint. (See *Rialto Irr. Dist.* v. *Brandon*, 103 Cal. 384, 386 [37 P. 484]; *Central Pac. Ry. Co.* v. *Feldman*, 152 Cal. 303, 308 [92 P. 849]; *Laguna Drainage Dist.* v. *Charles Martin Co.*, 5 Cal.App. 166, 173 [89 P. 993]; *Northern Light & Power Co.* v. *Stacher*, 13 Cal. App. 404, 408 [109 P. 896].) ■ However, a general allegation of necessity is sufficient. (*Northern Light & Power Co.* v. *Stacher*, 13 Cal.App. 404, 408 [109 P. 896]; accord: *People* v. *Thomas*, 108 Cal.App.2d 832, 838 [239 P.2d 914]; *People* v. *Marblehead Land Co.*, 82 Cal.App. 289, 297 [255 P. 553].) ■ The statement in Linggi's complaint ''That it is necessary to take an easement over and across . . . [the Garovotti property] . . . in order to abate the nuisance,'' the abatement of which has been determined to be for the benefit of the public, meets the requirement of section 1241. *Spring Valley Water Works* v. *San Mateo Water Works.* 64 Cal. 123 [28 P. 447], which is relied on by Garovotti, concerned the sufficiency of the evidence and not the pleadings.

■ Upon a trial of the action, it will be necessary for Linggi to prove, by a preponderance of the evidence, his right and justification for the proposed condemnation. A somewhat stronger showing of those requirements is necessary than if the condemnor were a public or quasi public entity. ■ Linggi will not have the benefit of the conclusive presumption '' (a) of the public necessity of such . . . public improvements; (b) that such property is necessary therefor, and (c) that such proposed . . . public improvement is planned or located in the manner which will be most compatible with the greatest public good and the least private injury.'' (Code Civ. Proc., § 1241, subd. 2.) He might be denied the easement which he is endeavoring to obtain if other remedy is available to him which would be less injurious to private property. For example, the evidence may show that the proper public authorities have not been asked to enlarge the present facilities in Sir Francis Drake Boulevard and make that line adequate to carry off all of the sewage from Linggi's property. (*Cf. Machado* v. *Board of Public Works of Arlington, supra,* 71 N.E.2d 886.) The proposed route may not be the most direct one to reach the line in Oak Avenue, or possibly another route, although less direct, might be less injurious to all property owners concerned.

But such facts need not be alleged in the complaint.

The judgment is reversed.

Gibson, C. J., Shenk, J., Traynor, J., and Spence, J., concurred.

SCHAUER, J.—The majority declare that "Section 1244 of the Code of Civil Procedure, which states the requirements of the complaint in an eminent domain action, specifies only that the plaintiff must allege his right to take the property for public use. That requirement is satisfied by the general allegations in Linggi's complaint of facts showing a proposed taking pursuant to sections 1001 of the Civil Code and 1238, subdivision 8 of the Code of Civil Procedure. . . . In addition, section 1241 of the Code of Civil Procedure requires the condemnor to show that the use to which it is to be applied is one authorized by law and that the taking is necessary to such use. This section must be construed in conjunction with section 1244, and a statement of necessity is an essential element of the complaint. . . . The statement in Linggi's complaint 'That it is necessary to take an easement over and across . . . [the Garovotti property] . . . in order to abate the nuisance,' the abatement of which has been determined to be for the benefit of the public, meets the requirements of section 1241."

I do not agree that the complaint meets any of the requirements above set forth. On the contrary, the pleading shows: (1) that the plaintiff seeks to take defendant's property for a private use, not a public use; (2) that the proposed taking is for a use not authorized by law and that the taking is not necessary for any use authorized by law; (3) that the nuisance to be abated, if any nuisance at all is shown, is one which is not created by defendant but is created by the plaintiff and by the private use of plaintiff's property; and (4) that any duty to furnish more abundant or extensive sewer facilities to plaintiff and to the private uses of plaintiff's property is not one which the law imposes or can validly impose upon defendant or her property.

The Constitution of this state provides (art. I, § 1) that "All men . . . have certain inalienable rights, among which are those of . . . acquiring, possessing, and protecting property" and (art. I, § 14) that "Private property shall not be taken or damaged for public use without just compensation . . .," and section 1238 of the Code of Civil Procedure,

relied upon by plaintiff, states that "the right of eminent domain may be exercised in behalf of the following public uses: . . ." I think it is clearly implied from the language above quoted that private property shall not be taken for a private use, with or without compensation.

Plaintiff alleges in his complaint that "there is erected upon the [parcel owned by him] . . . a certain apartment house . . .; that said apartments, as private residences, require a good, sufficient and healthy sewage disposal system; that heretofore said sewage disposal system has been so constructed as to lead to a public sewage disposal line in Sir Francis Drake Boulevard on the northerly end of said Parcel . .; that said public sewage system in Sir Francis Drake Boulevard is not adequate to take the line from plaintiff's property . . . during the rainy season . . . That affiant has been informed and believes that upon such information and belief alleges that the only way plaintiff is able to dispose of sewage collected in his apartment houses . . . will be over and across [defendant's land on which is erected her residence] . . . to the public sewage line in Oak Avenue [on which defendant's land borders]." It is not alleged that plaintiff's multiple-unit property is to be used for other than his private purposes or that rental rates are to be fixed or controlled by a public agency.

It appears to me that for this court to so construe the code sections upon which plaintiff relies, as to permit him to exercise the right of eminent domain upon such allegations will result in the unlawful taking of private property for a private use, rather than a permissible taking for a public purpose, and will offend all sense of pertinent constitutional guarantees. We have only recently ruled that "The Constitution does not contemplate that the exercise of the power of eminent domain shall secure to private activities the means to carry on a private business whose primary objective and purpose is private gain and not public need." (*City & County of San Francisco* v. *Ross* (1955), 44 Cal.2d 52, 59 [279 P.2d 529].) If the same principle is applied here the judgment must be affirmed.

Carter, J., concurred.

Respondent's petition for a rehearing was denied August 17, 1955. Carter, J., and Schauer, J., were of the opinion that the petition should be granted.