Leonard J. Supple, J.
Plaintiff here seeks to condemn for public school purposes approximately 50 acres of unimproved land owned by the defendant Pace College (hereinafter referred to as “ Pace ”). The answer of the said defendant, in addition to a general denial of the essential allegations of the petition, sets forth a separate and complete defense which extends for eight typewritten pages and which incorporates by reference the current General Bulletin of the main college, which is in New York City, the current General Bulletin of the Westchester branch of said college, which is in Westchester County, and a map of the area showing the land here sought by the plaintiff. The main thrust of such defense are allegations to the effect that the defendant Pace is an institution of higher learning, chartered by the Board of Regents of the State of New York, and that its properties, including properties which are the *807 subject of the within condemnation proceeding, are already devoted to a public use and accordingly are immune from condemnation by the plaintiff.
Plaintiff has moved to strike the defense as being insufficient in law. Upon the motion both parties have submitted extensive affidavits. The court believes that, under the circumstances here presented, the facts essential to the disposition to be made herein are sufficiently established to warrant granting summary judgment to the defendant dismissing the petition upon the merits (CPLR. 404, subd. [b]; 103, subd. [b]; 3211, subd. [c]; 3212, subd. [b]).
If the subject parcel is already devoted to a public use, it may not be condemned in the absence of specific statutory authority therefor (Matter of the City of Brooklyn, 143 N. Y. 596, affd. 166 U. S. 685) unless the plaintiff is the sovereign, i.e., the State of New York (Matter of Grade Crossing Elimination Act \_Altamont], 234 App. Div. 129,131).
That the plaintiff has a valid general grant of power to condemn lands for school purposes cannot be doubted (Education Law, § 404, subd. 2; Board of Educ. v. Harper, 191 N. Y. S. 273). Accordingly, if the subject parcel is not already devoted to a public use, it matters not whether the plaintiff be regarded as the depository of delegated power of the State to condemn, or whether before the court, albeit under another name, is the sovereign, the State of New York.
The concept of a public use within the context of the condemnation laws is not susceptible of precise definition. The words of Mr. Justice Crouch in Matter of New York City Housing Auth. v. Muller (270 N. Y. 333, 340) are here particularly apt: “ Over many years and in a multitude of cases the courts have vainly attempted to define comprehensively the concept of a public use and to formulate a universal test. They have found here as elsewhere that to formulate anything ultimate, even though it were possible, would, in an inevitably changing world, be unwise if not futile. Lacking a controlling precedent, we deal with the question as it presents itself on the facts at the present point of time. ‘ The law of each age is ultimately what that age thinks should be the law. ’ (People ex rel. Durham R. Corp. v. La Fetra, 230 N. Y. 429, 450.) ”
As far as is known to this court, there is no controlling precedent in this State. Elsewhere, the subject has received attention (Connecticut Coll. for Women v. Calvert, 87 Conn. 421; 48 L. R. A. [N. S.] 485 and see Note, p. 491). A divided court there held that Connecticut College for Women did not hold its property for public use to the extent that a State statute dele *808 gating to that college the right of condemnation was constitutional. The decision was based upon a failure to find that the public at large was permitted to enroll in the institution. However, the majority opinion took occasion twice to remark that property devoted to higher education of women was property devoted to a public use. In California in University of Southern Cal. v. Robbins (1 Cal. App. 2d 523, cert. den. 295 U. S. 738) the court reached a contrary conclusion. It should be noted that the plaintiff in that case was not the Avorld-famous State institution known as the University of California but was, in fact, an institution having the characteristics of the defendant Pace here. The Connecticut case was decided in 1913 and the California case in 1934. They can be reconciled by the language of Mr. Justice Crouch (p. 340), i.e., “in an inevitably changing world * * * we deal with the question * * * at the present point of time. ”
While not involving a college, the case of Rehfuss v. City of La Crosse (240 Wis. 619) is interesting since there the court held that a library open to the public, but privately controlled, could properly be granted the right to condemn since its property was devoted to a public use.
We turn now to a more detailed examination of the situation of defendant Pace. (Most of the following is applicable to all similar institutions but there are certain exceptions applicable to religiously oriented bodies not pertinent here.) It is chartered by the Board of Regents of the State of New York and, as such, its relationship to government and to the public is substantially determined by a number of statutes. It is automatically a member institution of the University of the State of New York (Education Law, § 214), which University is governed and controlled by the Board of Regents (Education Law, § 202). It is subject to visitation by the Regents, the State Commissioner of Education, or their respective representatives, which officials may require as often as desired reports giving such information and in such form as the Regents or the Commissioner shall prescribe. If the reports are not furnished, or any other law or rule of the University is violated, the Regents may suspend the charter or any other of the rights and privileges of Pace (Education Law, § 215). If any trustee of Pace should be guilty of any misconduct, incapacity or neglect of duty, or if the Regents be satisfied that Pace has failed or refused to carry into effect its educational purposes, the Regents may remove any trustee of Pace after a hearing upon notice. In case of such removal, the Regents may appoint successors to the trustees so removed
*809 (Education Law, § 226, subd. 4). Pace’s educational functions, including the courses it may offer, the content of such courses and the degrees it may award, are minutely regulated, including specific requirements as to the qualifications of the faculty and standards to be used in fixing their compensation. (Regulations of Commissioner of Education, subch. A, parts 50, 52; 8 NYCRR 50.1 et seq.) Just as a public utility may not cease to serve without governmental consent, Pace may not dissolve without the consent of the Regents (Education Law, § 219, subd. 3).
Since Pace is a nonprofit corporation, if it should cease to exist, distribution of its assets remaining in dissolution will be distributed in accordance with the cy pres doctrine (Education Law, § 220) and, in any event, its permanent academic records must be disposed of as the State Department of Education may direct or the court may order (Education Law, § 219, subd. 4).
As may be seen from the foregoing, Pace, in common with all other institutions of higher learning in this State which are chartered by the Regents, can scarcely regard itself as free to conduct its affairs in such ways as it may see fit, but must always work in close harmony with, and under the immediate and direct supervision and control of, State officers who, in turn, are charged with “ the general management and supervision of all public schools and all of the educational work of' the state, including the operations of The University of the State of New York ” (Education Law, § 101; italics added.). Pace as a member institution is included in the latter.
It is true that other businesses are, likewise, in the exercise of police power of the State, subject to licensing, inspection and the rule-making power of public officials, but there are differences in degree. The degree of governmental regulation to which Pace is subject is, at least as broad, and perhaps broader, than that applicable to a public utility. It cannot be compared with police power regulation of professionals (Education Law, tit. 8), barbers (General Business Law, art. 28), or funeral directors (Public Health Law, art. 34), to name a few.
However, there is yet more to demonstrate the fact that privately endowed colleges in this State are, for all practical purposes, part and parcel of the State system of education mentioned in the statutes (e.g., Education Law, § 207; § 305, subd. 1).
The Regents, either directly or through the Commissioner of Education, may lend to, or deposit with, institutions like Pace certain named educational materials, owned by the State or even acquired by the State specifically for such loan (Education *810 Law, § 213, subd. 1) all in the interest of the quality of educational opportunity available to all who may attend public or so-called “ privately endowed ” colleges.
Each four years the Board of Regents is required to plan what is needed to meet the State’s needs in the field of higher education and to transmit such plan to the Governor and the Legislature on or before December 1. In preparing the plan, “ the plans and facilities of existing public and private institutions shall be fully evaluated and considered ” (Education Law, § 237). Pace’s facilities, like those of all similar institutions in the State, are regarded as an integral part of the total of higher educational facilities of the State available to meet the public need of all its citizens.
Finally, of interest here, are the provisions of section 227 of the Education Law which authorize colleges like Pace to construct and operate water works, and thereafter to construct sewer systems for use by the college community itself and for use by certain other persons in the vicinity. The statute confers on such colleges the right to condemn real property for such purposes (Education Law, § 227, subd. 4). This grant constitutes a finding by the Legislature that property of colleges devoted to water works and sewer systems is property devoted to a public use. While not conclusive on the point, such a legislative finding is entitled to great weight by the judiciary in passing on the issue (Denihan Enterprises v. O’Dwyer, 302 N. Y. 451). Since, however, the ultimate determination of the public use character of any property is a question for judicial not legislative, determination (People ex rel. Horton v. Prendergast, 248 N. Y. 215, 222), the failure of the Legislature to grant to colleges such as Pace a general power to condemn cannot foreclose a judicial determination that such public use exists. This court agrees with the Legislature that any property which Pace may have devoted to water works and sewer systems is property devoted to a public use, but it is also persuaded that all of Pace’s property devoted to its corporate purposes is, likewise, devoted to a public use. It would be a strange rule of law which insulated property devoted to the purely service and incidental functions of water supply and sewerage disposal from condemnation under a general delegated power to condemn, while rendering vulnerable to pre-emption by condemnation the property and facilities devoted to its primary function, i.e., higher education.
As for the fact that the land in question is still vacant, this factor will not here require a finding that it is not devoted to *811 public use since it clearly appears upon the motion that the land was acquired for, and plans are actively being implemented to use the land for, additional buildings and college facilities. (Pocanticxo Water Works Co. v. Bird, 130 N. Y. 249).
Since the court has found that the property, which is the subject of the within condemnation proceeding, is property devoted to public use, it is therefore exempt from condemnation unless either the Legislature has expressly authorized such condemnation or unless the plaintiff is, in fact, the State of New York. Since there is no claim that any such special statute has been enacted, and the court knows of no such special statute, it will proceed to determine the issue of whether or not the plaintiff is the State of New York in another garb.
It is here asserted that the plaintiff, while nominally the Board of Education of a Union Free School District of this State, is, at least for the purposes of this proceeding, to be regarded as the State of New York. As previously indicated, if this is so, it matters not that the court has found the defendant Pace has already devoted the property in question to a public use.
The status of boards of education of this State has been the subject of numerous rulings by our courts. It is here asserted that members of the boards of education are State officers. It it true that our courts have said that, in discharging duties imposed upon them under the Education Law, they act as officers of the State, but it has also been said that they have a dual capacity (Lewis v. Board of Educ. of City of N. Y., 258 N. Y. 117, 119, 120). Section 2 of the Public Officers Law does not include them in its definition of State officers, and it has been held that a member of a board of education is not a State officer so as to exempt him from the statutory requirement that no more than one local office may be held, by the same individual at the same time (Metzger v. Swift, 258 N. Y. 440). On the other hand, such member is a State officer for purposes of the home rule provisions of the State Constitution (Lanza v. Wagner, 11 N Y 2d 317).
Nevertheless, as previously indicated, the State of New York conducts a State system of education and it cannot be doubted that the operations of the Union Free School District here involved constitute a part of that system.
The plaintiff Board of Education is a corporation (Education Law, § 1701). The district, not the board, is defined as a municipal corporation in one statute (General Corporation Law, § 3, subd. 2), but not in another (General Municipal Law, § 2). One of the most learned jurists who ever graced the bench of our Court of Appeals has said that a board of education is a govern *812 mental agency of the State but that it is not a civil division of the State. It is the school district that is a civil division of the State. As such agency of the State, the board did not share the sovereign immunity of the State and, therefore, was liable in negligence for its failure to discharge a duty enjoined upon it by law (Herman v. Board of Educ., 234 N. Y. 196).
The right to condemn is subject to strict construction (Society of N. Y. Hosp. v. Johnson, 5 N Y 2d 102, 107), and while it is one thing to say that, while a board of education is discharging a State responsibility pursuant to power delegated to it as an agency of the State, it is immune from interference by local authority (Union Free School Dist. v. Village of Hewlett Bay Park, 279 App. Div. 618), it is quite another to say that a board of education of a local school district, even within the boundaries of the district, is the State itself.
Even conceding that members of the plaintiff Board of Education are State officers for this purpose, and conceding that, in this attempt to condemn this land, they are carrying out a duty enjoined on them by State statute and are acting as an agency or instrumentality of the State, that is not to say that the character of the plaintiff here is the State itself.
In Pantess v. Saratoga Springs Auth. (255 App. Div. 426, 427-428) the court said, in part, as follows:
‘ ‘ There are activities which are governmental in their nature which are carried on directly by the State, although through an agency employed for that purpose; and there are still others for the carrying out of which the State has delegated to an agency the necessary powers to that end. * * *
‘ Where the State assumes to act directly in the carrying out of its governmental function, even though it create and use a corporation for that purpose, it assumes responsibility for the conduct of its agent * * * But, when the State delegat.es the governmental power for the performance of a State function, the agency exercises its independent authority as delegated, as does a city, and its responsibility for its acts must be determined by the general law which has to do with that class of agent and corporate activity, apart from liability on the part of the State. That is the case when the State delegates its State function of education to a school board, its public health function to a local board of health, when it delegates broader governmental functions to a county, city or village. In such instances there is no authority for making claim against the State, but the agency exercising the delegated authority must respond for its own actionable conduct. ”
*813 In Braun v. State of New York (203 Misc. 563) the Court of Claims granted a motion to dismiss as against all defendants other than the State of New York on the ground that such other defendants, while agencies of the State and performing a State function, were not the State itself. Such dismissed defendants included two State teacher colleges and the State University of New York, each of which, as plaintiff here, is a part of the State system of education.
Accordingly, since the land which is the subject of the within proceeding is already devoted to a public use, and the plaintiff is not the sovereign, the land may not be condemned.
The court would like to take this occasion to commend all counsel for the excellent briefs furnished to the court upon this motion.
Submit judgment on notice. The exhibits may be obtained from the Calendar Clerk of Rockland County Supreme Court.