[S. F. No. 22510. In Bank. Feb. 1, 1968.]

THE PEOPLE ex rel. DEPARTMENT OF PUBLIC WORKS, Petitioner, v. THE SUPERIOR COURT OF MERCED COUNTY, Respondent; ROY L. RODONI et al., Real Parties in Interest.

Harry S. Fenton, Holloway Jones, Jack M. Howard, William C. DeMartini, Charles E. Spencer, Jr., and William R. Edgar for Petitioner.

Thomas C. Lynch, Attorney General, and Robert L. Bergman, Deputy Attorney General, as Amici Curiae on behalf of Petitioner.

Linneman, Burgess, Telles & Van Atta, L. M. Linneman and James E. Linneman for Real Parties in Interest.

Fadem & Kanner and Gideon Kanner as Amici Curiae on behalf of Real Parties in Interest.

TRAYNOR, C. J.—The Department of Public Works seeks to compel the trial court to proceed with the condemnation of three instead of two parcels of real property owned by the real parties in interest, Roy and Thelma Rodoni.

The department built a freeway across a farm owned by the Rodonis. The farm consists of a southern rectangular parcel and a northern triangular parcel. The northeast corner of the former touches the southwest corner of the latter. The freeway crosses the adjoining corners, taking a tip of each, which total .65 acres. As a result, the northern parcel of approximately 54 acres is landlocked.

In addition to the .65 acres the freeway occupies, the department seeks to condemn the remaining landlocked 54 acres pursuant to Streets and Highways Code section 104.1.[1] Its purpose is to protect the fisc by eliminating the risk that

[1] "Whenever a part of a parcel of land is to be taken for State highway purposes and the remainder is to be left in such shape or condition as to be of little value to its owner, or to give rise to claims or litigation

excessive severance damages to the landlocked parcel might be awarded for the taking of the corner that provided access to it. The department points out that if it is allowed to condemn the entire parcel the Rodonis will receive full value for their property, the risk of excessive severance damages will be eliminated, and ultimately it will be able to reduce the cost of the freeway by selling the part of the parcel not needed for freeway purposes.

The Rodonis challenge the excess condemnation on the ground that taking property for such a purely economic purpose violates article I, section 14 of the California Constitution[2] because such taking is not for a "public use." They contend that excess condemnation must be limited to parcels that may properly be deemed remnants with respect to which the public interest in avoiding fragmented ownership comes into play. In their view, 54 acres, even if landlocked and of little value, cannot be deemed a remnant of .65 acres. They insist that the state pay severance damages for the landlocked parcel and allow them to retain it, even though severance damages may be equal to its full original market value. They also assert that the excess condemnation is prohibited by section 14½ of article I of the California Constitution[3] because it is not limited to land lying within 200 feet of the freeway.

The trial court decided in favor of the Rodonis and ordered the complaint dismissed insofar as it seeks to condemn the landlocked parcel. It held that to allow the taking of any land

concerning severance or other damage, the department may acquire the whole parcel and may sell the remainder or may exchange the same for other property needed for State highway purposes."

[2]California Constitution article I, section 14: "Private property shall not be taken or damaged for public use without just compensation having first been made to, or paid into court for, the owner. . . ."

[3]"The State, or any of its cities or counties, may acquire by gift, purchase or condemnation, lands for establishing, laying out, widening, enlarging, extending, and maintaining memorial grounds, streets, squares, parkways and reservations in and about and along and leading to any or all of the same, providing land so acquired shall be limited to parcels lying wholly or in part within a distance not to exceed one hundred fifty feet from the closest boundary of such public works or improvements; provided, that when parcels which lie only partially within said limit of one hundred fifty feet only such portions may be acquired which do not exceed two hundred feet from said closest boundary, and after the establishment, laying out and completion of such improvements, may convey any such real estate thus acquired and not necessary for such improvements, with reservations concerning the future use and occupation of such real estate so as to protect such public works and improvements and their environs and to preserve the view, appearance, light, air and usefulness of such public works.

"The Legislature may, by statute, prescribe procedure."

not physically necessary for the freeway would be a taking for other than the public use and that if section 104.1 were construed to allow such a taking it would be unconstitutional. The department then petitioned for a writ of mandate ordering the Merced County Superior Court to proceed with the trial of the original complaint or in the alternative for a writ of prohibition forbidding the court from proceeding in accordance with its order dismissing the complaint in part. (See *Tide Water Assoc. Oil Co.* v. *Superior Court* (1955) 43 Cal.2d 815 [279 P.2d 35]; *Financial Indem. Co.* v. *Superior Court* (1955) 45 Cal.2d 395, 399 [289 P.2d 233]; *People* ex rel. *Dept. Public Works* v. *Rodoni* (1966) 243 Cal.App.2d 771 [52 Cal.Rptr. 857].)

We hold that section 104.1 validly authorizes the trial court to proceed with the action to condemn the 54 acres. We also hold, however, that it must refuse to condemn the property if it finds that the taking is not justified to avoid excessive severance or consequential damages. The latter holding will assure that any excess taking will be for a public use and preclude the department from using the power of excess condemnation as a weapon to secure favorable settlements.

It is for the Legislature to determine what shall be deemed a public use for the purposes of eminent domain, and its judgment is binding unless there is no " 'possibility the legislation may be for the welfare of the public.' " (*Linggi* v. *Garovotti* (1955) 45 Cal.2d 20, 24 [286 P.2d 15], quoting *University of Southern Cal.* v. *Robbins* (1934) 1 Cal.App.2d 523, 525-526 [37 P.2d 163]; see also *Housing Authority* v. *Dockweiler* (1939) 14 Cal.2d 437, 449-450 [94 P.2d 794]; *Lux* v. *Haggin* (1886) 69 Cal. 255, 303-304 [4 P. 919, 10 P. 674]; *County of Los Angeles* v. *Anthony* (1964) 224 Cal.App.2d 103, 106 [36 Cal.Rptr. 308]; *Tuolumne Water Power Co.* v. *Frederick* (1910) 13 Cal.App. 498, 503 [110 P. 134].) "Any departure from this judicial restraint would result in courts deciding on what is and is not a governmental function and in their invalidating legislation on the basis of their view on that question at the moment of decision, a practice which has proved impracticable in other fields." (*United States* ex rel. *T.V.A.* v. *Welch* (1946) 327 U.S. 546, 552 [90 L.Ed. 843, 848, 66 S.Ct. 715].)

Sections 104.1, 104.2, 104.3 and 104.6 of the Streets and Highways Code set forth the purposes for which the department may acquire or condemn property not immediately needed or property not physically needed for state highway

purposes. In addition to the excess condemnation authorized by section 104.1, the department may condemn property for nonhighway public uses to be exchanged for property already devoted to such nonhighway uses when the department wishes to acquire the latter property for highway use. (§ 104.2)[4] It may condemn property adjacent to highways and other public works to be constructed by it and thereafter convey the adjacent property to private parties subject to restrictions protecting the highway or other public use. (§ 104.3.)[5] It may also acquire property for future needs and lease such property until it is needed. (§ 104.6.)[6] None of these sections limits the others, and each "is a distinct and separate authorization." (§ 104.7.)

Section 104.3 is patterned after section 14½ of article I of the California Constitution and, like that section, limits the property to be taken for protective purposes to property lying within 200 feet of the public work. It may be assumed without deciding that the constitutional provision compelled the statutory limitation; that the reference to streets in section 14½ includes state highways and that protective condemnations

[4] "Whenever property which is devoted to or held for some other public use for which the power of eminent domain might be exercised is to be taken for State highway purposes, the department may, with the consent of the person or agency in charge of such other public use, condemn, in the name of the people of the State of California, real property to be exchanged with such person or agency for the real property so to be taken for State highway purposes. This section does not limit the authorization to the department to acquire, other than by condemnation, property for such purposes."

[5] "The department may condemn real property or any interest therein for reservations in and about and along and leading to any State highway or other public work or improvement constructed or to be constructed by the department and may, after the establishment, laying out and completion of such improvement, convey out [sic] any such real property or interest therein thus acquired and not necessary for such improvement with reservations concerning the future use and occupation of such real property or interest therein, so as to protect such public work and improvement and its environs and to preserve the view, appearance, light, air and usefulness of such public work; provided, that land so condemned under authority of this section shall be limited to parcels lying wholly or in part within a distance of not to exceed one hundred fifty feet from the closest boundary of such public work or improvement; provided that when parcels which lie only partially within such limit of one hundred fifty feet are taken, only such portions may be condemned which do not exceed two hundred feet from said closest boundary."

[6] "The authority conferred by this code to acquire real property for state highway purposes includes authority to acquire for future needs. The department is authorized to lease any lands which are held for state highway purposes and are not presently needed therefor on such terms and conditions as the director may fix and to maintain and care for such property in order to secure rent therefrom. . . ."

authorized by section 14½ are also limited by it. ▮ Section 14½, however, does not limit the power of the Legislature to authorize excess condemnation for other than protective purposes. ''Because eminent domain is an inherent attribute of sovereignty, constitutional provisions merely place limitations upon its exercise.'' (*People* ex rel. *Dept. of Public Works* v. *Chevalier* (1959) 52 Cal.2d 299, **304** [340 P.2d 598].)

Section 14½ was adopted in 1928 at a time when the validity of any excess condemnation was doubtful. It was not adopted to limit the power of eminent domain but to authorize condemnations that its sponsors believed would not be permitted under then current rules of constitutional law. (1928 Ballot Pamphlet, Argument for Proposed Senate Constitutional Amend. No. 16.) Although it includes limitations on the condemnations it authorizes and to that extent limits the state's inherent power of eminent domain, it in no way limits those condemnations that it does not authorize. Accordingly, since it only authorizes condemnations for protective purposes, it does not restrict condemnations for other purposes. (*People* ex rel. *Dept. of Public Works* v. *Garden Grove Farms* (1965) 231 Cal.App.2d 666, 668-673 [42 Cal.Rptr. 118]; see also *State* ex rel. *Highway Com.* v. *Curtis* (1949) 359 Mo. 402 [222 S.W.2d 64]; *State* ex rel. *Thomson* v. *Giessel* (1955) 271 Wis. 15, 51-54 [72 N.W.2d 577, 595-597]; *State* ex rel. *Evjue* v. *Seyberth* (1960) 9 Wis.2d 274, 279-281 [101 N.W.2d 118, 121-122].)

▮ In section 104.1 the Legislature has determined that excess condemnation is for a public use whenever remaining parcels are of little value or in such a condition as to give rise to claims or litigation concerning severance or other damages. Although the statutory language is broad, it may reasonably be interpreted to authorize only those excess condemnations that are for valid public uses; namely, condemnation of remnants (see e.g., *Kern County High School Dist.* v. *McDonald* (1919) 180 Cal. 7, 16 [179 P. 180]; *People* v. *Thomas* (1952) 108 Cal.App.2d 832, 836 [239 P.2d 914]; *In re Opinion of Justices* (1910) 204 Mass. 616, 619-620 [91 N.E. 578]; 2 Nichols, Eminent Domain (3d ed. 1963) § 7.5122 [1], p. 717) or condemnations that avoid a substantial risk of excessive severance or consequential damages. On the record before us, the taking in the present case is justified on the latter ground.

Although a parcel of 54 landlocked acres is **not a physical**

remnant, it is a financial remnant: its value as a landlocked parcel is such that severance damages might equal its value. Remnant takings have long been considered proper. "The reasoning behind the 'remnant theory,' . . . is that by limiting the acquisition to only such parts of the property as are needed by the particular improvement, fragments of lots would remain of such shape and size as to render them separately valueless, with the result that the city would be required to pay for the whole, although it took only a part, and with the further result that because of the lack of such value, the city would thereafter be deprived of collecting taxes on these remnants." (Annot., 6 A.L.R.3d 297, 317 (1966) ; see also, 2 Nichols, Eminent Domain (3d ed. 1963) § 75122 [1] p. 718.) There is no reason to restrict this theory to the taking of parcels negligible in size and to refuse to apply it to parcels negligible in value.

In the present case the entire parcel can probably be condemned for little more than the cost of taking the part needed for the highway and paying damages for the remainder. It is sound economy for the state to take the entire parcel to minimize ultimate costs.

Under these circumstances excess condemnation is constitutional. "The cost of public projects is a relevant element in all of them, and the Government, just as anyone else, is not required to proceed oblivious to elements of costs. [Citations.] And when serious problems are created by its public projects, the Government is not barred from making a common sense adjustment in the interest of all the public." (*United States ex rel. T.V.A.* v. *Welch, supra,* 327 U.S. 546, 554 [90 L.Ed. 843, 849] ; see also *United States* v. *Agee* (6th Cir. 1963) 322 F.2d 139 ; *Boston* v. *Talbot* (1910) 206 Mass. 82, 89 [91 N.E. 1014] ; *New Products Corp.* v. *State Highway Comr.* (1958) 352 Mich. 73, 86 [88 N.W.2d 528] ; *Kern County High School Dist.* v. *McDonald, supra,* 180 Cal. 7, 16 ; *People* v. *Thomas, supra,* 108 Cal.App.2d 832, 836.)

We need not decide in what specific cases other than those mentioned the statute authorizes excess condemnation. It should be emphasized, however, that the economic benefit to the state must be clear. The economic benefit of avoiding the cost of litigating damages is not sufficient. The statute does not authorize excess condemnation anytime the condemnee claims severance or consequential damages. To allow such condemnation would nullify the constitutional guarantee of

just compensation (Cal. Const., art. I, § 14) by permitting the state to threaten excess condemnation, not because it was economically sound, but to coerce condemnees into accepting whatever value the state offered for the property actually taken or waiving severance or consequential damages to avoid an excess taking.[7]

As so construed section 104.1 is not an unconstitutional delegation of legislative power. Adequate standards appear in other provisions of the code. Section 102 of the Streets and Highways Code requires the Highway Commission, before authorizing condemnation by the department of any real estate for highway purposes, to make a determination that the "public interest and necessity require the acquisition" and that "the real property or interest therein described in such resolution is necessary for the improvement."[8] Section 103 makes the decision of the commission on the necessity of the improvement and of the taking of given property conclusive.[9] Section 104 provides a nonexclusive list of various purposes for which property is deemed necessary.[10]

[7]Nor does section 104.1 authorize excess condemnation for recoupment purposes, as the term is used in those cases that disfavor it. The statute does not authorize the state to condemn for the sole purpose of taking lands enhanced by the improvement in order to recoup that increase in value or for the sole purpose of developing the area adjacent to the improvement for a profit. (See Annot., 6 A.L.R.3d 297, 311-314.) The department's purpose is to avoid the windfall to the condemnee and the substantial loss to the state that results when severance damages to a severed parcel are equal to its value.

[8]Streets and Highways Code section 102: "In the name of the people of the State of California, the department may condemn for State highway purposes, under the provisions of the Code of Civil Procedure relating to eminent domain, any real property or interest therein which it is authorized to acquire. The department shall not commence any such proceeding in eminent domain unless the commission first adopts a resolution declaring that public interest and necessity require the acquisition, construction or completion by the State, acting through the department, of the improvement for which the real property or interest therein is required and that the real property or interest therein described in such resolution is necessary for the improvement."

[9]Streets and Highways Code section 103: "The resolution of the commission shall be conclusive evidence: (a) Of the public necessity of such proposed public improvement. (b) That such real property or interest therein is necessary therefor. (c) That such proposed public improvement is planned or located in a manner which will be most compatible with the greatest public good and the least private injury."

[10]Streets and Highways Code section 104: "The department may acquire, either in fee or in any lesser estate or interest, any real property which it considers necessary for State highway purposes. Real property for such purposes includes, but is not limited to, real property considered necessary for any of the following purposes: [Herein are listed such purposes as rights of way, offices, parks adjoining the highway, landscaping, drainage, maintenance, etc.]"

Only after these other conditions are met does section 104.1 come into play.

■ The power of eminent domain may be delegated by the Legislature to administrative bodies. (*Holloway* v. *Purcell* (1950) 35 Cal.2d 220, 231 [217 P.2d 665].) Discretion cannot be absolute, but "if the delegating statute establishes an ascertainable standard to guide the administrative agents no objection can properly be made to it." (*Wotton* v. *Bush* (1953) 41 Cal.2d 460, 468 [261 P.2d 256].) In the *Holloway* case we held that standards found in Streets and Highways Code section 100.2 governing the discretion of the State Highway Commission in fixing the location of freeways were sufficiently definite. Section 100.2 authorizes the commission to approve the location of freeways whenever that location "in its opinion will best subserve the public interest." The standards found in section 104.1 are no less definite, and are similarly constitutional.

■ The question remains of the scope of review of the department's decision to condemn excess property. Section 103 of the Streets and Highways Code makes the determination of the Highway Commission conclusive on the necessity of taking particular land. If the taking is for a public use and just compensation is paid, no constitutional rights of the condemnee are infringed by making the issue of necessity nonjusticiable. (*People* ex rel. *Dept. of Public Works* v. *Chevalier, supra,* 52 Cal.2d 299; see also *Rindge Co.* v. *County of Los Angeles* (1923) 262 U.S. 700, 708-710 [67 L.Ed. 1186, 1193-1194, 43 S.Ct. 689].)

■ The issue of whether a taking is for a public use, however, is justiciable. (*People* ex rel. *Dept. of Public Works* v. *Chevalier, supra,* 52 Cal.2d 299.) The distinction between the scope of review of the questions of public use and necessity was properly recognized in *People* ex rel. *Dept. of Public Works* v. *Lagiss* (1963) 223 Cal.App.2d 23, 39 [35 Cal.Rptr. 554] : "The necessity for the construction of a highway at the place designated and in the manner determined by the Commission, together with the amount of land required therefor, are matters which were conclusively established by the adoption of the resolution [of necessity]. The question as to whether the land was to be devoted to a public use, however, as distinguished from private purposes or to accomplish some purpose which is not public in character, became a proper

issue for the judicial determination of the court.'' To raise an issue of improper excess taking, condemnees ·must show that the condemner is guilty of ''fraud, bad faith, or abuse of discretion in the sense that the condemner does not actually intend to use the property as it resolved to use it'' (*People* ex rel. *Dept. of Public Works* v. *Chevalier, supra,* 52 Cal.2d 299, 304), or that the contemplated use is not a public one (see also *People* ex rel. *Dept. of Public Works* v. *Lagiss, supra,* 223 Cal.App.2d 23, 35-44; *Yeshiva Torath Emeth Academy* v. *University of Southern Cal.* (1962) 208 Cal.App. 2d 618, 619-620 [25 Cal.Rptr. 422]; *County of San Mateo* v. *Bartole* (1960) 184 Cal.App.2d 422, 430-434 [7 Cal.Rptr. 569]; *People* ex rel. *Dept. of Public Works* v. *Nahabedian* (1959) 171 Cal.App.2d 302, 306-309 [340 P.2d 1053]).

 When, as in this case, the property is not needed for the physical construction of the public improvement, the question of public use turns on a determination of whether the taking is justified to avoid excessive severance or consequential damages. Accordingly, if the court determines that the excess condemnation is not so justified, it must find that it is not for a public use.

Let a writ of mandate issue ordering the trial court to proceed with the trial of the case under the original complaint in accordance with the views expressed herein.

McComb, J., Tobriner, J., Burke, J., and Sullivan, J., concurred.

MOSK, J.—I dissent.

Whenever an illustration of the voracious appetite of acquisitive government is desired, the action of the public agency here will serve well as Exhibit A.

To state the facts is to decide the case. Needing slightly more than a half acre for a public use (65/100 of an acre, to be precise), this governmental department seeks to take 54.03 acres of private property which it does not need and cannot use. Its avowed purpose is to speculate on resale to a private purchaser.

No further discussion should be required to decide that the proposed condemnation is improper. Yet the agency advances a strange latter-day economics theory that taking more costs less, and cites as authority Streets and Highways Code section 104.1. If the section purports to grant any such power to the state, it is clearly in conflict with article I, section 14, of the

California Constitution, which provides that ''Private property shall not be taken or damaged for *public use* without just compensation having first been made to, or paid into court for, the owner. . . .'' (Italics added.) Clearly no public use is involved in the taking of the 54 acres, for the land is admittedly more than 83 times in excess of that actually required for highway purposes.

Section 104.1, upon which the state relies, provides that ''Wherever a part of a parcel of land is to be taken for state highway purposes and the remainder is to be left in such shape or condition as to be of little value to its owner, or to give rise to claims or litigation concerning severance or other damage, the department may acquire the whole parcel and may sell the remainder or may exchange the same for other property needed for state highway purposes.''

A statute must be given a reasonable interpretation. (*People* v. *Murata* (1960) 55 Cal.2d 1, 7 [9 Cal.Rptr. 601, 357 P.2d 833], and cases cited.) It seems clear that when the Legislature adopted the foregoing section referring to ''the remainder'' after a taking, it contemplated situations in which an insignificant remnant might remain. As a leading authority explains, it is ''not an uncommon provision in the statutes relating to the laying out and widening of highways in force in the cities in which such conditions exist that, when part of a parcel of land is taken and the remainder is left in such condition or in such a shape as to be of little value to its owner, the city may take the whole and use or sell what it does not need for the highway, it being felt that it will be less expensive in the end for the city to take and pay for the whole of such lots and either to devote the remnants to municipal purposes, or, by consolidating contiguous remnants, sell them for a fair price, than to engage in protracted litigation over the question of damages to the remaining land with each owner. If the owner consents or if the statute provides merely that he may surrender the whole tract if he chooses, no constitutional objections can arise, for such a proceeding doubtless tends to save the public money; but, if the owner insists upon keeping what is left of his land, *grave constitutional difficulties* would be encountered if it was attempted to compel him to part with it. Construing such a statute as *limited in its application to trifling and almost negligible remnants* which would be unsuitable for private use after the part actually

needed for public use had been appropriated, it would probably be sustained in some jurisdictions at least as authorizing a taking for a purpose reasonably incidental to the laying out of public ways. However, if the proposed taking savored at all of a municipal land speculation, no court would hesitate to hold it unconstitutional.'' (Italics added; footnotes omitted.) (2 Nichols on Eminent Domain (3d ed. 1963) § 7.5122(1), pp. 718-719.)

Such a ''trifling and almost negligible remnant'' could result, for example, from a taking of 54 acres leaving an irregular half-acre residue; but to reverse that ratio, and deem 54 acres to be the remainder of a half acre, is truly a case of the tail wagging the dog.

The majority concede that the parcel of 54 acres here is not a physical remnant. That should end the lawsuit. But then they advance a novel theory, neither urged by the parties nor supported by authority, that ''remnant'' refers not only to geography but also to value.

If so, an inevitable query follows: ''Value to whom?'' Section 104.1 makes it crystal clear that the criterion is not value to the state, as the majority erroneously assume; to justify taking, the remainder must be ''of little value *to its owner.*'' By his resistance the owner here demonstrates that to him there is more than ''little value'' in the 54 acres. Even if the owner did not so contend, however, the court may take judicial notice that in the context of California's current population explosion, no 54-acre parcel in the state is without ascendant value. In the case at bench the purported ''little value'' of the 54 acres is attributed to the resultant landlocked condition of the property. Without deciding whether any property need remain totally inaccessible, property in a landlocked condition may readily become marketably valuable merely by acquisition of an easement for access, or by annexation of or to adjacent property.

The second clause of section 104.1 suggests that the excess taking must provide a benefit to the state. Without pursuing the dubious constitutional aspect of that overly broad provision, in this instance its application is fallacious: so long as just compensation for the taking must be paid, by condemning over 83 times more property than it needs, *a fortiori* the state is paying more than it must necessarily pay.

The theory of the agency is that by taking the land not required for public use, assertedly of little value, it will

recoup by resale.[1] But there is no repeal of the basic laws of the marketplace when the state becomes a vendor. If the land is truly of little value, the state will obtain little return by way of sale. Thus, there is no significant benefit to the state, as required by the statute, in depriving the owner of his property.

Nevertheless, the majority insist that ''The entire parcel can probably be condemned for little more than the cost of taking the part needed for the highway and paying damages for the remainder. It is sound economy for the state to take the entire parcel to minimize ultimate costs,'' and again later, the majority stress ''that the economic benefit to the state must be clear.'' While as indicated above, I doubt there is clear economic benefit to the state from this excessive taking, fundamentally I find the concept of economy, rather than public use or public purpose,[2] to be a unique and unsupportable rationalization to justify the seizure of an individual's private property.[3] The state relies heavily on *United States* ex rel. *T.V.A.* v. *Welch* (1945) 327 U.S. 546 [90 L.Ed. 843, 66 S.Ct. 715], in which 6,000 acres beyond that needed for dam purposes were taken, and the court there referred to ''a common sense adjustment.'' Factually, however, the case offers no guidance to us, for the excess land was not resold but was adapted to public recreational purposes, authority for which was specifically provided in the T.V.A. act.

What constitutes a public use is basically a question of fact. In *Linggi* v. *Garovotti* (1955) 45 Cal.2d 20, 24 [286 P.2d 15],

---

[1] The recoupment theory has been roundly condemned in Nichols (2 Nichols on Eminent Domain (3d ed. 1963) § 7.5122(3), p. 720): ''although sanctioned in countries in which the power of the legislature is not restricted by a written constitution,'' recoupment, which ''involves the taking of the property of one person and the sale of it to another for his own private use,'' has not been approved in American jurisdictions. (See also *In re Opinion of Justices* (1910) 204 Mass. 607 [91 N.E. 405, 27 L.R.A. N.S. 483]; *Atwood* v. *Willacy County Nav. Dist.* (Tex. Civ. App. 1954) 271 S.W.2d 137, 141.)

[2] As indicated in *Redevelopment Agency* v. *Hayes* (1954) 122 Cal. App.2d 777, 789 [266 P.2d 105], ''the more modern courts have enlarged the traditional definition of public use to include 'public purpose.''' Thus slum clearance was deemed a public purpose, even though after the taking and demolition of the slums, redevelopment was to be undertaken by private industry.

[3] In *Cincinnati* v. *Vester* (6th Cir. 1929) 33 F.2d 242, 245, an Ohio statute authorizing excess condemnation was criticized: ''If it means . . . that the property may be taken for the purpose of selling it at a profit and paying for the improvement, it is clearly invalid. . . . [I]t violates the due process clause of the Constitution.'' (Affd. in 281 U.S. 439, with the United States Supreme Court refraining from an opinion on any subject other than compliance with the statute.)

this court approved the rule: "whether, in any individual case, the use is a public use must be determined by the judiciary from the facts and circumstances of that case." Here the trial court, after hearing evidence and reviewing the facts, found that the proposed acquisition was not related to any public use and was therefore constitutionally impermissible. The state does not complain of an abuse of discretion, or, indeed, of erroneous conclusions by the trial court; it merely maintains that no court has the power to review its reliance on section 104.1. To the contrary, however, this court held in *People* v. *Chevalier* (1959) 52 Cal.2d 299, 304 [340 P.2d 598], that the issue of public use is justiciable in eminent domain proceedings.

Section 104.1, as interpreted by the state, would lack any definitive standards and thus clearly do violence to the constitutional requirement of due process. The trial court noted in its memorandum opinion that the state's right-of-way agent, as a witness, gave as his opinion under the provisions of section 104.1 "the state would have a right to take as much as one thousand acres of private property, even though it was not for a public use." If a thousand acres, why not 6,000 acres as in *Welch,* or 10,000 or 100,000 acres? If there is any limitation whatever on the amount of land the state may take, without intent to devote it to a public use, neither section 104.1 nor the majority opinion suggests the boundaries. Government's cavalier treatment of private property rights, abjectly approved by the majority, evokes apprehension that Big Brother may have arrived 16 years before 1984.

Amici curiae have complained that the power of the Department of Public Works to condemn any excess property without limitation becomes a potent weapon to be used against prospective condemnees who refuse to sell at the price offered by the department. Right-of-way agents, it is indicated, demand acquiescence in sale of the desired part of the land at the proffered price with a threat of a punitive taking of all the owner's property. This could be disregarded as a fanciful fear were it not for the state agency's petition for writ of mandate, which candidly admits that denial of the right of excess condemnation "will also have important and substantial side effects upon the heretofore successful policy of petitioner in negotiating the settlement of land acquisitions." We cannot be oblivious to the "tremendous power in government" and the need for "a growing sensitivity to the protection of the individual in his relation with govern-

ment,'' as Justice Tobriner has written. (Tobriner, *Individual Rights in an Industrialized Society* (1968) 54 A.B.A.J. 21, 22.)

The majority finally propose this doctrine: ''the question of public use turns on a determination of whether the taking is justified to avoid excessive severance or consequential damages.'' This concept is completely wrong. It ignores the key word: *use.*

Condemnation is not a necessary antidote for excessive damages, since the law has always been clear that excessive damages are indefensible in any case and under all circumstances, and a ready remedy by trial and appellate courts is available. (Code Civ. Proc., § 657, subds. 5 and 6; *Koyer* v. *McComber* (1938) 12 Cal.2d 175, 182 [82 P.2d 941] [new trial granted]; *Barrett* v. *Southern Pac. Co.* (1929) 207 Cal. 154, 166 [277 P. 481] [reversal on appeal]; *Maede* v. *Oakland High School Dist.* (1931) 212 Cal. 419, 425 [298 P. 987] [reduction on appeal]; 2 Witkin, Summary of Cal. Law (7th ed. 1960) Torts, § 443, pp. 1636-1637.) Indeed, that the trial judge was well aware of his responsibility is indicated by his written memorandum, noting that if excessive severance damages were awarded, the court would ''be remiss in its duty if it did not reduce whatever amount was excessive.'' Once the word ''excessive'' is eliminated from the majority's rule, we come to the nub of the problem: the state agency proposes no *use* of the property whatever, but merely seeks to avoid paying any severance or consequential damages even though the law recognizes such damages as being assessable in appropriate cases. (Code Civ. Proc., § 1248, subd. 2; 3 Witkin, Summary of Cal. Law (7th ed. 1960) Constitutional Law, § 236, p. 2046.)

I would substitute for the majority's rule the following: *the question of public use or purpose turns on a factual determination of what the public agency proposes to do with the property after acquisition.*

Employing that test, the trial court found as a fact that the property was not being taken for a public use. Since land speculation is clearly not a public use, the trial court was correct. I would therefore affirm the order.

Peters, J., concurred.

The petition of the real parties in interest for a rehearing was denied February 28, 1968. Peters, J., and Mosk, J., were of the opinion that the petition should be granted.