Decided May 8, 1989

UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

APPELLATE DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, | ) ) ) | CONSOLIDATED CASES DCA NO. 85-9029 CTC NO. 84-346 |
| Plaintiff-Appellee, | ) ) | |
| v. | ) ) | OPINION |
| LEONORA F. BORDALLO, et al., | ) ) | |
| Defendant-Appellants. | ) ) | |

Attorney for Appellants:    ROBERT L. KEOGH, Esq.
                            Law Office of Keogh & Butler
                            P.O. Box GZ
                            Agana, Guam  96910
                            Tel:  (671)472-6895

Attorney for Appellees:     ALEXANDRO C. CASTRO
                            Attorney GEneral
                            DAVID A. WEBBER
                            Civil Division
                            Office of the Attorney General
                            Saipan, MP  96950
                            Tel:  (670) 322-4311

BEFORE:  MUNSON, and HILL,[*] District Judges, and DELA CRUZ,[**] Judge.

_____

    [*]  The Honorable Irving Hill, Senior Judge, United States District Court for the Central District of California, sitting by designation.

    [**]  The Honorable Jose S. Dela Cruz, Judge, Commonwealth Trial Court, sitting by designation.

MUNSON, District Judge:

Defendant/appellants landowners appeal both the trial court's denial of a motion for a continuance and the memorandum opinion fixing valuation in their land condemnation cases.

FACTS

Under the Covenant,[1] the Commonwealth agreed to make available 17,799 acres of land on Tinian for use by the United States. Said land is called the "Military Retention Area" ("MRA"). The United States paid the Commonwealth 17.5 million dollars for, among other things, the Tinian land.[2] The Covenant did not require the Commonwealth to turn over to the United States fee simple title to the land. Instead, the Covenant required that what was to be turned over was a 50-year lease with an option for an additional 50 years of use.

Much of the land required to be turned over to the United States was obtained by the Commonwealth without condemnation. In all instances, the Commonwealth attempted to reach an agreement with the landowners under which the land owners would transfer to the Commonwealth a fee simple interest in the lands required and the Commonwealth would in turn provide the

---

[1] Covenant to Establish the Commonwealth of Northern Mariana Islands in Political Union with the United States of America, P.L. 94-241.

[2] The agreement between the Commonwealth and the United States also anticipated that the federal government could have available the harbor and the airport in Tinian. Technical Agreement Regarding Use of Land to be Leased by the United States in the Northern Mariana Islands, February 15, 1975, (Technical Agreement).

landowners, in an exchange, a fee simple interest in other lands on Tinian, Saipan or Rota. The defendants, Leonora F. Bordallo, et al. (Bordallo), were among those who did not agree to a land exchange through negotiation and, consequently, the Commonwealth filed condemnation proceedings.

The Commonwealth condemned a fee simple interest in the condemnation proceedings. Bordallo, on October 22, 1984, along with other land owners whose land had also been condemned, filed a motion to strike Paragraph IV of the complaint on the ground that the Commonwealth was not empowered to condemn a fee simple interest and could not condemn more than the leasehold interest it was required to turn over to the United States. The trial court denied the motion in a memorandum decision of December 21, 1984. Prior to trial, Bordallo asked the trial court to grant her a continuance to allow her to depose her expert who was unable to attend the trial. The court denied the motion and the case proceeded to trial.

The government offered live expert testimony. The opinion of Bordallo's expert was admitted through an appraisal report and a deposition, by stipulation of both parties at trial. Tr. p.130, 1.8-18. The Commonwealth's expert valued the land at eighty cents per square meter; Bordallo's expert offered an estimate of from six to ten dollars per square meter. The trial court ruled that the land was worth $1.50 per square meter.

Bordallo's appeal raises five issues as follows:

1.  Whether the Commonwealth has authority to condemn

the lands in question for the benefit of the United
States Government.

2. Whether, even if the Commonwealth has the authority
to condemn those lands, it may condemn them in fee
simple.

3. Whether the trial court abused its discretion when
it denied Bordallo's motion for a continuance so
that she could depose her expert.

4. Whether the trial court substituted its own opinion
of the value of the land in place of the experts'
and, if so, whether this was error.

5. Whether the trial court erred when it excluded
evidence of the value of land exchanged by the
government for land within the MRA or the price for
which the exchanged land was later sold.

## ANALYSIS

1. Whether the Commonwealth has authority to condemn
the lands in question for the benefit of the United
States Government.

We have no doubt that the Commonwealth has the authority
to condemn property for public uses and public purposes and we
have no doubt that the Commonwealth has the authority to condemn
the lands in question for the purposes stated. The United
States entered into the Covenant with the Northern Mariana
Islands in 1975. Pursuant to the Covenant, the Commonwealth
enacted a Constitution which was ratified by the citizenry and
approved by the United States. On October 24, 1977, President
Jimmy Carter issued Proclamation 4534 which placed the
Constitution into full force and effect. Article XIII, section
1 of the Constitution authorizes the Commonwealth to condemn
land for public purposes. The Commonwealth has codified a

**810**

comprehensive statutory scheme which governs this procedure. 1 CMC § 9211 et. seq. Included within this scheme is the constitutional requirement that it be done only for a public purpose. The Commonwealth condemned the Tinian land in order to meet its obligations under the Covenant, which clearly satisfies the requirement of public purpose.

> 2. Whether, even if the Commonwealth has the authority to condemn these lands, it may condemn them in fee simple.

Bordallo argues that condemnation of a fee simple exceeds the authority and discretion of the Commonwealth in view of the fact that the Commonwealth was not required to turn over a fee simple interest to the United States. She goes on to argue that condemning an estate beyond that required destroys the public use and public purpose justification for the condemnation. We do not agree.

There are ample precedents for the proposition that in condemning land, governmental authorities may take land beyond that geographically required for the specific public purpose, or an estate in land of a greater nature than is specifically required, whenever the additional taking can be viewed as beneficial to the taking authority and justified by the public purpose of the project. For example, it is within the discretion of a governmental body requiring only .65 acres for highway purposes to take the entire 54 acre parcel which encompassed the smaller area because, were the two parcels separated and the smaller piece only taken, the larger piece

would have no access and its value would be destroyed.  People v.
Superior Court, 68 Cal.2d 206, 65 Cal. Rptr. 342 (1968).

As the court said in the above cited case,

> In the present case the entire parcel can probably
> be condemned for little more than the cost of
> taking the part needed for the highway and paying
> damages for the remainder.  It is sound economy
> for the state to take the entire parcel to
> minimize ultimate costs.  65 Ca. Rptr. at 346-47.

It has also been held that where the condemning authority
takes land for landfill purposes (a temporary use), it
nevertheless has discretion to acquire a fee simple interest.
United States v. 49.79 Acres of Land, 582 F. Supp. 368, (D. Del.
1983).  The court said,

> The argument that a fee simple title is not
> necessary to accomplish the purposes contemplated
> by the legislation is frequently made in
> condemnation cases.  However, it has been
> unanimously rejected by every court which has
> considered the issue.  Id. at 373.

It is obvious that the cost of taking the fee simple in the
instant case would be so close to the cost of taking a 50-year
possessory right with an option for 50 more years, that it is
"sound economy" for the Commonwealth to take the fee simple
interest "to minimize ultimate costs".  Moreover, with a
substantial part of the land in question having been acquired by
voluntary means in fee simple, the reversionary rights would be
like a patchwork quilt if less than a fee simple is taken when
condemnation is necessary.  There are going to be reversionary
rights since the United States does not require full title to the
lands  and  will not  use the  in perpetuity.  The lands  are in

812

a single large overall piece.    It would be impracticable to have some of the reversionary rights belonging to the Commonwealth as a result of its voluntary purchase of fee simple estates and others belonging to the landowners because the Commonwealth is deemed powerless to acquire a fee simple interest from them by means of condemnation.

Additionally, as the trial judge observed, the judiciary should grant deference to the policy decision of the Commonwealth government in determining that a fee simple interest should be taken.    The executive branch should be afforded a substantial degree of discretion in a situation of this type.

Bordallo's challenges to the estate condemned must be rejected for the reasons stated.

> 3.  Whether the trial court abused its discretion when it denied Bordallo's motion for a continuance so that she could depose her expert.

The decision to deny a continuance is left to the sound discretion of the trial court and will not be overturned absent an abuse of that discretion.  <u>Rios-Berrios v. Immigration and Naturalization Service</u>, 776 F.2d 859, 862 (9th Cir. 1985).

The complaint was filed on September 14, 1984.  Bordallo was informed in March 1985, that the trial would be held in June of that year.  On May 9, 1985, the parties stipulated to have the trial moved to August 27, 1985.  Bordallo intended to call a Mr. Gaspard as her expert witness.  On August 5, 1985, the government took Gaspard's deposition to prepare for trial.  The

**813**

deposition lasted about three hours during which time the government questioned Gaspard. The stenographic reporter then had to leave for personal reasons which, Bordallo asserts, precluded her from asking questions. On August 21, 1985, Bordallo filed a motion to continue the trial set for August 27, 1985, because Gaspard would be unavailable. However, a letter and an accompanying itinerary from Gaspard filed with the motion indicated that Gaspard would be available for trial on August 27, 1985. The court denied the motion.

Bordallo maintains that the court erred in denying the motion. She argues that the court put its own scheduling before her opportunity to have a fair trial. She further argues that she was prejudiced by having to proceed to trial with only Gaspard's deposition and appraisal report.

This is a land condemnation case which Bordallo's attorney recognizes turns almost entirely on expert testimony. Eleven months after the case was filed, Bordallo went to trial without her expert, relying entirely on the deposition taken of her expert by the opposing side. She claims it is the Court's fault that she had to go to trial without an expert, but that is not the case. It was her duty to find an expert and have him ready for trial. It was her obligation to depose her expert if the expert was going to be unavailable for trial. Bordallo complains that she did not have a sufficient opportunity to question her expert at the government's deposition of her expert. That problem could have been remedied by taking another

deposition of Bordallo's own expert at a later time.

The report of Bordallo's expert was admitted into evidence as was the expert's deposition testimony by agreement of both parties. The trial court's decision to deny Bordallo's motion for a continuance was not an abuse of discretion.

4. Whether the trial court erroneously substituted its own opinion of the value of the land in place of the experts' opinion.

The government's expert valued the land at eighty cents ($.80) per square meter; Bordallo's expert valued the land at between $6.00 and $10.00 per square meter. The trial court found that the fair market value of the land was $1.50 per square meter. Bordallo argues on appeal that the court erroneously 1) considered as evidence its viewing of the property and 2) substituted its own valuation of the land in place of the valuation testimony of the experts.

Some appellate opinions contain language to the effect that the trier of fact in a condemnation case may not consider its viewing of the property as evidence of valuation. See e.g., In the Matter of Blackstone Valley Dis. Com'n, 490 A.2d 974 (RI 1985). We are convinced, after reading the carefully crafted and carefully reasoned Memorandum of the trial judge, that this rule has not been violated in the instant case.

We are also convinced that, in fixing valuation, the trial judge did not cast aside and disregard all of the testimony of the experts and fix the valuation relying entirely on his own personal subjective opinion.

**815**

This case was tried to the bench leaving the trial judge the ultimate arbiter of fact. Two expert opinions were introduced on the fair market value of the land. The court determined and set out in a detailed analysis why the government's expert was more credible than Bordallo's. The Court noted that the property did not have utilities and that the only access was by narrow unimproved roads. The property served primarily as grazing land for cattle. There were no homes or commercial buildings on the property. The Court found that the highest and best use of the property was agricultural. It further stated that it relied on the government's expert in arriving at the final determination of value. The Court noted several defects in the appraisal testimony of the landowners' expert, Gaspard. They included the fact that Gaspard relied on Tinian land exchanges that were negotiated by the government which by statute were inadmissible in the condemnation proceeding. Commonwealth Public Law 4-13, § 14. Further, an August 15, 1985 letter from Gaspard to Keogh states that certain additional information which Gaspard deemed "extremely relevant for [his] consideration in formulating an accurate opinion of value" was never provided to Gaspard. Thus, his appraisal and valuation was by his own account not accurate.

These factors motivated the Court to say that it was disregarding Gaspard's testimony. As the trial court said, "The Gaspard report is discredited in every aspect . . . In sum, the court does not consider the Gaspard appraisals of any assistance

**816**

and discards them". Under the circumstances, there was no error in that statement of the Court. As the 6th Circuit said in Welch et ux. v. Tennessee Valley Authority, 108 F.2d 95, 101 (C.C.A. 6, 1939),

> The Court, when sitting without a jury, may take into consideration the witnesses' sources of knowledge, their interest, good intentions, their seeming honesty, their respective opportunities for personal knowledge of the facts about which they testify and their conduct and manner on the witness stand. All of these things may be considered in determining the weight which should be given to a statement, some of which may be so adverse to the testimony of the witness as to justify a trial court in ignoring it.

See also 5 Nichols, The Law of Eminent Domain, 18.46 (3 ed.) 1985.

The weighing of the evidence in a condemnation proceeding is the main function of the fact-finder and it is not for the appellate court to reweigh the evidence. U.S. v. 131.68 Acres of Land, 695 F.2d 872, 877 (5th Cir. 1983).

Bordallo's claims of error as to the valuation fixed by the trial court, and the court's methods of fixing it, must be rejected.

5. Whether the trial court erred when it excluded evidence of the value of land exchanged by the government for land within the MRA or the price for which the exchanged land was later sold.

The trial court granted the government's motion to exclude evidence of the value of Saipan and Tinian land exchanged for land within the MRA. The court also excluded evidence of subsequent sales by private land owners of land they had obtained by exchange. The trial court found that the

**817**

exchanges that had taken place which Bordallo desired to use as evidence were the result of compromise to avoid litigation, namely, condemnation proceedings. The court held that under Commonwealth Rule of Evidence 804, (the counterpart of Fed.R. Evid. 804) Commonwealth Public Law 4-13, and case precedent, the evidence was inadmissible. Bordallo asserts that the court abused its discretion in excluding this evidence.

Public Law 4-13 prohibits the introduction into evidence in an eminent domain proceeding of an offer or counterclaim for the sale, purchase, or exchange of land. The evidence which Bordallo attempted to introduce falls squarely within the ambit of this statute and was properly excluded.

Further, as the trial court pointed out, the private landowners within the MRA were put on notice as early as 1975 that the government would possibly attempt to acquire their land. In 1983, this possibility became a reality. The Covenant mandated that the Commonwealth attempt to acquire the land through land exchange and if this were not possible, to then proceed with condemnation proceedings. As the government argued, these exchanges were the result of settlement proceedings accomplished as an alternative to legal proceedings. Commonwealth Rule of Evidence 408 precludes the admissibility of compromise negotiations.

Case law holds that comparable data used by an appraiser in arriving at an opinion as to fair market value can only involve voluntary sales. See e.g., Alaska v. Dupont, 437 P.2d

**818**

421 (Alaska). Sales which stem from the threat of condemnation are not voluntary and are, therefore, inadmissable. _Id_.

For all these reasons, we affirm the trial court.

DATED: *May 8, 1989*

_____
Judge Alex R. Munson

_____
Judge Irving Hill

_____
Judge Jose S. Dela Cruz

**819**