June 8, 1990

# IN THE SUPREME COURT OF THE
## COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| COMMONWEALTH OF THE NORTHERN MARIANA ISLANDS, ) | APPEAL NO.  90-003<br>SUPERIOR COURT NO. 84-346 |
| Plaintiff/Appellee, ) | |
| vs. ) | OPINION |
| LEONORA F. BORDALLO, et al., ) | |
| Defendants/Appellants. ) | |

Argued and submitted on May 10, 1990.

Counsel for Appellant:   Robert L. Keogh, Esq.

Counsel for Appellee:   Office of the Attorney General
David A. Webber, Assistant Attorney
General

Before VILLAGOMEZ, Justice, BORJA, Justice, and HILLBLOM, Special Judge.

VILLAGOMEZ, Justice:

On September 14, 1984, the Commonwealth of the Northern Marianas (hereafter "government") filed a complaint with the Trial Court (now "Superior Court") to condemn defendants' land in fee

210

simple. The government intended to condemn the land then lease (pursuant to section 802[1] of the Covenant) it to the U.S. Government for fifty years, with the option to renew for another fifty years. On October 22, 1984, defendants moved to strike paragraph IV of the complaint (in which the government sought a fee simple interest), contending that the government did not have the requisite basis (public purpose) for condemning more than a leasehold interest of fifty years. The motion was denied.

On August 13, 1985, the government moved to exclude certain evidence pertaining to it's acquisition of private land, within the Tinian military retention area, by land exchanges. The evidence also pertained to subsequent sales of the land received by the private persons under the exchanges. The motion was granted on August 23, 1985.

On August 20, 1985, the defendants moved to continue the trial because their expert witness, Mr. Gaspard, could not appear on the scheduled date.[2] The motion was denied.

On August 27, 1985, the trial commenced and the government presented its expert witness. The defendants went to trial without their expert witness.

---

[1] "The following property will be made available to the Government of the United States by lease to enable it to carry out its defense responsibilities: (1) on Tinian Island, approximately 17,799 acres (7,203 hectares) and the waters immediately adjacent thereto."

[2] Another ground for the motion for continuance of the trial was to engage in further discoveries. But for purposes of this appeal, we do not need to address that basis of the motion.

On October 1, 1985, the Trial Court issued its memorandum opinion authorizing the condemnation and establishing fair value. CNMI v. Nabors, No. 84-351 (NMI T.Ct. Oct. 1, 1985). The court indicated its difficulty in determining how the defendants' appraiser arrived at the land values contained in his appraisal report and admitted that it had neither seen nor heard the appraiser's testimony. It then discredited and discarded the defendants' appraisal report. The government's expert witness appraised the value of the land to be $.80 per square meter. The defendants' expert witness, through his appraisal report, admitted into evidence, appraised the value of the land to range from $6.00 to $10.00 per square meter. The Trial Court determined the "fair"[3] value of the land at $1.50 per square meter. Id., slip op. at 11.

On November 29, 1985, the defendants appealed to the Appellate Division of the District Court for the Northern Mariana Islands (hereafter "Appellate Division").[4]

On May 8, 1989, the Appellate Division issued an opinion affirming the trial court. CNMI v. Bordallo, App.No. 85-9029 (May 8, 1989). However, on that date the Appellate Division was no longer an appellate court for the Northern Mariana Islands in local

---

[3] Under 1 CMC §9224, the trial court "[M]ust hear the parties, and establish a fair value for the land."

[4] The Appellate Division dismissed the appeal on procedural grounds. That dismissal was reversed by the Ninth Circuit. Thereafter, the Appellate Division considered and decided on the merits of the appeal.

cases[5] and had no authority to issue any appellate decision.[6] Therefore, the opinion is void and has no force and effect in the Commonwealth. This Court, established on May 2, 1989, became the appellate court of the Commonwealth and assumed jurisdiction of this appeal pursuant to the Commonwealth Judicial Reorganization Act of 1989, Public Law 6-25.

On January 17, 1990, the defendants appealed to this Court.[7]

The defendants also filed an appeal to the Ninth Circuit from the opinion of the Appellate Division. However, the Ninth Circuit dismissed the appeal for lack of jurisdiction pursuant to Public Law 6-25.[8]

---

[5] Wabol v. Villacrusis, No. 89-005 (NMI Dec. 11, 1989).

[6] If the Appellate Division were to continue functioning as a Commonwealth appellate court after May 2, 1989, the Commonwealth would have two separate, equal, and independent appellate courts over only one trial court. That anomalous situation would be unstable, unworkable and contrary to Covenant sections 203(d), 402(c), and 103.

[7] Prior to May 2, 1989, any appeal from a decision of the Appellate Division would have been taken to the Ninth Circuit. After May 2, 1989, all pending appeals in the Appellate Division and the Ninth Circuit were transferred to this Court. Vaughn v. Bank of Guam, No. 89-004 (NMI June 6, 1990). To effectuate the actual transfer of this appeal, appellants filed a notice of appeal to this Court.

[8] The dismissal by the Ninth Circuit was based on an uncontested motion to dismiss for lack of jurisdiction. The decision is unpublished. CNMI v. Bordallo, No. 89-15822 (9th Cir. May 1, 1990).

## ISSUES

1. Whether the Trial Court abused its discretion when it denied the defendants' motion to strike paragraph IV of the complaint.

2. Whether the Trial Court abused its discretion when it granted the Government's motion to exclude evidence.

3. Whether the Trial Court abused its discretion when it refused to continue the trial date.

4. Whether the Trial Court erroneously substituted its own opinion as to fair value of the land for that of the experts' opinions.

## DENIAL OF MOTION TO STRIKE

We have carefully examined the trial court's memorandum decision and order denying the defendants' motion to strike paragraph IV of the complaint. We find the decision to be well-reasoned and supported by the applicable provisions of the Covenant, NMI Constitution and laws.

The cases cited by the defendants do not precisely stand for the propositions for which they were offered -- that the government may not condemn in fee simple if only a lesser interest is necessary. This matter was brought up by Special Judge Hillblom at oral argument and appellees could not explain why they cited such cases.

Case law indicates that the government may condemn land and acquire an area in size or an interest which is greater than that

actually needed. People v. Superior Court, 68 Cal.2d 206, 65 Cal. Rptr. 342 (1968); United States v. 49.79 Acres of Land, 582 F.Supp. 368, (D.Del. 1983).

We conclude that the Trial Court did not abuse its discretion when it denied defendants' motion to strike paragraph IV of the complaint. The Commonwealth Government has the power and justification (based on public purpose) to condemn the Tinian Military Retention Area in fee simple so that it can lease the same to the U.S. Government pursuant to Section 802 of the Covenant.

## EXCLUSION OF EVIDENCE

The Trial Court excluded all evidence regarding the value of Saipan and Tinian land exchanged by the government with Tinian landowners for their land in the Tinian Military Retention Area. The court also excluded all evidence of subsequent sales of the land received by the Tinian landowners under such exchanges. There were three bases for the Trial Court's decision.

First, the court ruled that comparable sales or data used for the appraisal of property being condemned must be "voluntary". It also ruled that a sale made by compulsion does not meet the "willing buyer and willing seller" requirement, and that a sale is not "voluntary" if made by condemnation or under threat of condemnation. In this case, because the land exchanges within the Military Retention Area were made under threat of condemnation the Trial Court concluded that the exchanges and subsequent sales could not be used as comparable sales or data.

215

Second, the Trial Court ruled that under Rule 408, Com.R.Evid.,[9] evidence of compromise negotiations are inadmissible. The policy of the rule is to favor settlement and the excluded evidence was negotiated settlement transactions between private landowners and the government.

Third, the court ruled that Public Law 4-13, § 4, (7 CMC § 3308) specifically prohibits the use of such evidence in condemnation cases.[10] The law states as follows:

> No offer or counteroffer for the sale, purchase or exchange of land shall be admissible as evidence in any eminent domain action in either the Commonwealth Trial Court or the Federal District Court for the Northern Mariana Islands. Nor shall evidence of money settlement, land exchanges, or land purchases by the Government be admissible in such actions.

The defendants contend that the Trial Court, in excluding such

---

[9] "Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statement made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice of a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution."

[10] The Trial Court correctly stated that where a statute conflicts with a rule of the court, the statute prevails.

data, erred because under Rule 703, Com.R.Evid.,[11] the facts and data forming the basis of an expert's opinion need not be admissible evidence. They need not be admissible if such facts or data are of the type reasonably relied upon by experts in forming opinions or inferences upon the subject matter of their testimony. Defendants argue that although such evidence is inadmissible, it is of the type reasonably relied upon by experts in appraising value of land in condemnation cases. Therefore, the expert should be allowed to rely upon those facts in forming his opinion.

█ We have carefully examined the Trial Court's analysis in its order excluding evidence and the arguments of the defendants in their appellate brief. We agree with the Trial Court on two points. First, that Public Law 4-13 prevails over the provisions of Rule 703, Com.R.Evid.[12] Second, since the evidence being excluded are not evidence of "voluntary" sales,[13] they are not the type of evidence reasonably relied upon by experts in appraising

---

[11] "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing. If of a type reasonably relied upon by experts in the particular field in forming opinions or inferences upon the subject, the facts or data need not be admissible in evidence."

[12] The evidence excluded by the Trial Court are not the type allowed by Rule 703 for the expert to rely upon in forming his opinion. But even if they are, P.L. 4-13 excludes them.

[13] They are not "voluntary" sales since they were sold or exchanged under threat of condemnation. Only voluntary sales are used as comparables.

217

value of land in condemnation cases.

For the above reasons, we conclude that the Trial Court did not abuse its discretion when it granted the government's motion to exclude evidence.

## DENIAL OF THE MOTION TO CONTINUE TRIAL

The defendants could not have their expert testify at the trial because he had another commitment in Japan.[14] Consequently, the defendants moved for a continuance of the trial date. The Trial Court denied the motion and required the defendants to proceed to trial without their expert witness. Without the presence of the expert witness, the court could not understand the defendants' appraisal report, which it discredited and discarded.

Expert testimony in land valuation is crucial. Even the Trial Court recognized this fact in its order excluding evidence: "There is no dispute that in condemnation cases, such expert testimony is needed and used." CNMI v. Bordallo, No. 84-346, slip op. at 2 (NMI Super.Ct. August 23, 1985) (Emphasis added.) Had the court allowed defendants' expert witness to testify, the court might have been able to understand how the expert reached his opinion on land values.

We give strong weight to the fact that this is a condemnation

---

[14] The defendants' expert witness lived on Guam and represented to defendants' counsel his inability to be on Saipan on the day of the trial. Counsel would not, and felt he should not subpoena his own expert witness. We do not disagree.

218

case, the result of which will be the loss of defendants' land. Ownership of land is important in relation to the culture and traditions of the people of the Northern Mariana Islands. <u>See</u> Covenant, section 805. Because land in the Commonwealth is scarce, once lost it cannot easily be replaced. Thus, the court should let the landowners present their case fully.

The government is required to pay "just compensation" for private property taken for a public purpose. NMI Constitution, Article XIII, section 1. In determining just compensation or "fair value" (1 CMC § 9224), the court should likewise allow the private owners to present their case fully, including the testimony of expert witnesses. To force a private landowner to defend a condemnation case without his expert witness (when he has a willing expert) would be like forcing a man to fight a duel without a weapon.

Under the circumstances, the trial court's denial of a continuance was unfair. The defendants were virtually denied the opportunity to present their side of the case. Consequently, in applying the four factors used by the Ninth Circuit for reviewing denials of requested continuance under the abuse of discretion standard, we conclude that the Trial Court clearly abused its discretion in denying the defendants' motion for continuance.[15]

We agree with the defendants' contentions that:

_____

[15] <u>U.S. v. 2.61 Acres of Land More or Less</u>, 79 F.2d 666, 671 (9th Cir. 1985).

219

1. They were diligent in their efforts to ready their defense prior to the trial date.

2. A continuance would have allowed the defendants' expert witness to testify at trial.

3. The extent that a continuance would have inconvenienced the court and plaintiff is not great, compared to the prejudice to the defendants.

4. The defendants suffered harm as a result of the denial of the motion for continuance.

## THE TRIAL COURT SUBSTITUTING ITS OWN OPINION AS TO FAIR VALUE

In light of our opinion that the Trial Court abused its discretion by denying the defendants' motion to continue the trial date, this matter will be remanded and the Superior Court will redetermine the fair value of the land involved. Therefore, we have no reason to address this specific issue at this time in this appeal. However, we do emphasize that it is the court, not the experts, who establishes the fair value of the land.

Based on the above analysis, we REVERSE the decision of the Trial Court only as to its denial of defendants' motion for continuance. This case is hereby REMANDED to the Superior Court with instructions to allow the defendants to present their expert witness at trial, with the opportunity to fully explain the content of his appraisal report and the manner in which he reached his

220

opinion on fair value.[16]

IT IS SO ORDERED.

Dated this _8th_ day of _June_, 1990.

_____
RAMON G. VILLAGOMEZ, Associate Justice

_____
JESUS C. BORJA, Associate Justice

---

[16] Special Judge Hillblom concurs with this opinion and will enter a separate opinion.

HILLBLOM, Special Judge, Concurring:

I concur in the opinion of the Court. However, I believe that the issue of the existence and continuing application of the Trusteeship Agreement ("Agreement")[1] raised by the defendants deserves comment.

The defendants argue that a taking in fee simple of land belonging to inhabitants of the Northern Mariana Islands ("NMI") by the NMI government for the benefit of the United States violates Article 6 of the Agreement. If Article 6 does prohibit such a taking, the defendant would be entitled to a reversal of the condemnation judgment.

The Agreement is between the United States and the United Nations; it was approved by both parties and is in the nature of a treaty.[2] United States courts have characterized the Agreement as self-executing because it grants enforceable rights to the inhabitants of the Trust Territory, including the NMI. People of Saipan v. United States Department of Interior, 502 F.2d 90 (9th Cir. 1974). I agree with that interpretation.

Until the Agreement is properly terminated by the United States and the United Nations, rights vested under the Agreement in the inhabitants of the NMI cannot be unilaterally modified by the United States or the NMI. See International Status of South-West

_____

[1]H.R.J. Res. 233, 80th Cong., 1st Sess., 93 Cong. Rec. 8731 (1947); Exec. Order No. 9875, 3 C.F.R. 658 (1947).

[2]See McKibben, The Political Relationship Between the United States and Pacific Island Entities: The Path to Self-Government in the Northern Mariana Islands, Palau, and Guam, 31 Harv. Int'l L.J. 257, 266 (1990).

Africa, I.C.J. Rep. 128 (1950).

In determining the continued application of the Agreement we must turn to the Covenant.[3] Section 1002 of the Covenant provides that a determination by the President of the United States that the Agreement has terminated is not subject to review. On November 3, 1986, President Reagan issued a proclamation to the effect that the Agreement was no longer applicable to the Northern Mariana Islands. That proclamation was not of the sort contemplated by Section 1002 and did not by its terms terminate the Agreement. Therefore, Section 1002 does not prohibit judicial review of such action. Even if the Agreement were terminated in the sense that the United Nations lost its oversight authority, the President would not have the authority to terminate rights vested in the inhabitants without due process of law.

Precisely what rights have vested under the Agreement is a determination properly left to the judiciary. We would have to determine whether rights granted to the inhabitants of the NMI would constrain or prohibit the NMI government from condemning the land in question.

The primary purpose and thrust of the Agreement is to provide "self government" or "independence" to the inhabitants of the Trusteeship. A duly-elected government acting according to its constitutional authority to condemn land certainly cannot be said

---

[3]Covenant to Establish a Commonwealth of the Northern Mariana Islands in Political Union with the United States of America, reprinted in Pub. L. No. 94-241, 90 Stat. 263 (1976)(hereafter "Covenant").

to have violated the language or purpose of the Agreement. Further, no allegation was made that the condemnation proceeding violated any fundamental right secured by international law and applicable in the Trust Territory, such as the Universal Declaration of Human Rights.[4] Although correct in asserting the viability of the rights secured by the Agreement, the defendant misconstrued the Agreement to prohibit the conduct of the NMI government in this condemnation action.

Entered this 8th day of June, 1990.

_____
Larry L. Hillblom, Special Judge

_____

[4] G.A. Res. 217(III)A, U.N. Doc. A/810 (1948). See also Parker & Neylon, Jus Cogens: Compelling the Law of Human Rights, 12 Hastings Int'l & Comp. L. Rev. 411 (1989).